THE NATIONAL BANK OF PONTIAC

*v.*

SOLOMON E. KING *et al.*

*Filed at Ottawa June 13, 1884.*

1. PRACTICE IN THE SUPREME COURT—*who may complain of error.* On an appeal by one of the parties to a decree, to this court, who alone assigns error, suggestions of error not affecting the appellant can not be considered.

2. RELEASE OF MORTGAGE—*as affecting an intervening judgment lien.* A tract of land was purchased subject to a mortgage thereon, previously given by the vendor, which was assumed by the purchaser as part of the price, and he gave his note, secured by mortgage on the premises, for the

balance of the purchase money, but never paid anything on the purchase. After the recovery of a judgment against him by a third person, the purchaser reconveyed the land to his vendor, in satisfaction of his notes and mortgage, and the mortgagee entered satisfaction of this second mortgage upon the record, in ignorance of the fact of there being a judgment against the mortgagor, and the land was sold under execution issued on the judgment: *Held,* that the purchaser from the original mortgagor never had any interest in the land other than the equity of redemption, he having never paid anything, and that the plaintiff in execution, by his purchase, succeeded to no greater interest on account of the entry of satisfaction of the mortgage of record, he being in no way injured by such release, and in no manner deceived by it or induced to take any action he would not otherwise have taken.

3. PURCHASER *of land from one who had never paid the purchase price—rights of such second purchaser, as against the original vendor.* A judgment creditor who levies upon and purchases the land of his debtor, who had bought the same but paid nothing of the purchase money, acquires only the interest the debtor had in the premises, which is nothing but the right to perform the debtor's contract. Before such creditor can obtain any title he must pay what his debtor was obligated to pay as purchase money and taxes accruing on the land.

4. A purchased a tract of land subject to a prior mortgage, which he was to satisfy, as a part of the purchase price, giving back his own mortgage on the same premises to secure the purchase money. The purchaser never paid any part of the purchase price of the land, nor any of the taxes which had accrued thereon, and finally reconveyed the premises to his vendor in satisfaction of the obligations he had assumed in respect to them, and the latter entered of record satisfaction of the mortgage he had received. During the time intervening the purchase by A and his reconveyance, a third person recovered a judgment against him, but this fact seems not to have been known to the vendor of A at the time he entered satisfaction of his mortgage. The premises were levied upon and sold under that judgment, the plaintiff therein becoming the purchaser. Subsequently, upon bill filed by the holder of the original mortgage, to foreclose, in which the execution purchaser was made a party, it was decreed that unless the latter should, within a prescribed time, perform the agreement made by his debtor, A, at the time he purchased the premises, in respect to complainant's mortgage, and also reimburse complainant the amount of taxes paid by him which ought to have been paid by A, then such execution purchaser should take nothing by his purchase: *Held,* the decree was proper.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Livingston county; the Hon. OWEN T. REEVES, Judge, presiding.

It appears from the original and amended bills exhibited in the circuit court of Livingston county by Solomon E. King and Hugh M. Hamilton, against Isaac Defenbaugh, Franklin D. Sweetser, the National Bank of Pontiac, and the widow and heirs of Allen Walters, deceased, that on the first day of August, 1870, Franklin D. Sweetser and Henry Stanchfield were seized in fee simple of the quarter section of land about which this litigation is had, with some other land described in the bill; that on that day they made and delivered to Emma F. Hapgood their note for $3700, to become due in six years, with interest at ten per cent per annum, and to secure the same they executed and delivered to Charles Hapgood a mortgage or trust deed on all the lands described in the bill; that on the same day Sweetser and Stanchfield made and delivered to Emma F. Hapgood their other note for $1150, to become due in five years, with interest at ten per cent per annum, and also on the same day made and delivered to Lydia F. Hapgood their other note for $1150, to become due in five years, with ten per cent interest per annum, and to secure the payment of these last named notes they made another trust deed or mortgage on the same land described in the first mentioned mortgage, to Charles Hapgood. Both trust deeds or mortgages were recorded shortly after the making of the same, in the proper office in the county where the lands are situated.

It further appears that afterwards, on the 2d day of October, 1871, Sweetser and Stanchfield sold and conveyed the quarter section, which is the real subject of this litigation, to Isaac Defenbaugh, for $6400, subject to the two Hapgood mortgages, both of which were on record, and on the same day they sold and conveyed the other two tracts described in the bill, to Adam Defenbaugh, for $4600, subject, also, to the two Hapgood mortgages. As a part of the purchase money for the tract of land sold to Isaac Defenbaugh, he assumed and agreed to pay on the Hapgood note, $3428.80,

and for the balance ($2971.20) he gave to Sweetser his four notes, each for $650, to become due in seven, eight, nine and ten years, and one other note for $371.20, to become due in seven years, all bearing interest at the rate of ten per cent per annum, and secured the same by mortgage made to Sweetser, on the lands sold to him. In the same way Adam Defenbaugh agreed to pay a portion of the purchase money for the tracts of land sold to him, on the Hapgood notes, and gave his notes for the balance of the purchase money, running for a long series of years, secured by mortgage on the land sold to him. Isaac and Adam Defenbaugh went into the actual possession of the lands respectively purchased by them, but never paid any part of the purchase price. Failing to pay any part of the purchase money, or the taxes accruing thereon, an arrangement was afterwards, on the 14th day of October, 1875, made, by which Isaac Defenbaugh reconveyed the quarter section conveyed to him, back to Sweetser, in satisfaction of the note and mortgages executed by him to Sweetser, and also in satisfaction of the amount agreed to be paid by him on the Hapgood note, and for no other consideration. It was expressly agreed this latter conveyance was made subject to the Hapgood mortgages, and Sweetser released of record the mortgage made to him by Isaac Defenbaugh. In the meantime, (that is, on the 10th day of August, 1875,) the National Bank of Pontiac recovered a judgment in the circuit court against Isaac Defenbaugh and others, for $1700, which became a lien on the equity of redemption which the judgment debtor had in this quarter section of land. Afterwards, perhaps on the 19th day of June, 1876, a *pluries* execution, issued on the judgment in favor of the bank, was levied on this quarter section, and it was sold to the bank, to which the usual certificate of purchase was issued. No redemption from that sale having been made, the sheriff made the bank a deed for the land. It is alleged, and it is no doubt true, that Sweetser had no

actual knowledge of the judgment in favor of the bank when he released the Isaac Defenbaugh mortgage. Defenbaugh did not disclose that fact.

It further appears, that on the 21st day of October, 1875, Sweetser sold and conveyed the same quarter section that Isaac Defenbaugh had just reconveyed to him, to Allen Walters, for the sum of $6400, and to secure a part of the purchase money Walters gave to Sweetser his four notes, each for $1100, to become due March 1, 1881, 1882, 1883 and 1884, respectively, with ten per cent interest per annum, and secured the same by mortgage on the land, and also secured the balance of the purchase money ($2000) on another tract of land. These notes of Walters were assigned soon after, and delivered to King & Hamilton, complainants. At the time of the conveyance of this quarter section to Walters, the Hapgood trust deeds or mortgages were known to be an incumbrance on the land, and complainants, King & Hamilton, who were interested in the matter, covenanted with Walters, in writing, to take care of the Hapgood mortgages, so that when Walters paid for the land he would have it discharged from those prior mortgages. Afterwards the Hapgood notes came into the possession of complainants, and were held by them when their original bill herein was filed.

It is alleged in the amended bill, that at the time of filing the original bill in this cause, complainants were, and had been for a long time, the legal and equitable owners of all the notes described as having been secured on this land, having derived their title thereto by regular assignments from the payees. It is also charged in the bill, that at the time the bank recovered its judgment against Isaac Defenbaugh and others, both the Hapgood mortgages and the mortgage given by Isaac Defenbaugh to Sweetser, were prior and valid liens on the land, and are still such liens thereon, and that the bank is fraudulently seeking to acquire the title to this quarter section, under the circumstances stated, against the

rights and equities of complainants.   It is also alleged that taxes had accrued on the land, and had been paid by the holders of the securities, which were also a prior lien on the land.   Allen Walters died December 28, 1878, and his widow and heirs are made defendants to the bill, with the National Bank of Pontiac, Franklin B. Sweetser, Isaac Defenbaugh, and others.   The National bank answered the bill, and set up and insisted on its title acquired under its judgment against Isaac Defenbaugh, and denied the ownership of the notes by complainants, as set forth in the bill.   Franklin D. Sweetser also answered the bill, admitting all the material allegations, and then filed a cross-bill reciting the fact, and asked to have the Isaac Defenbaugh mortgage foreclosed in his favor, notwithstanding the release of the same on record, alleging the release was procured by fraud, when he had no knowledge of the judgment of the bank against the mortgagor.   To the cross-bill, it seems, the circuit court sustained a demurrer, and dismissed it.   The minor heirs of Allen Walters answered by guardian *ad litem*, and the cause being at issue, it was heard by the court on the bill and proofs introduced at the hearing.

The court found the facts substantially as they are alleged in the original and amended bills, and decreed that unless the defendant the National Bank of Pontiac pay to complainants the sum of $7983.29, (which sum includes the amount due on the mortgage from Isaac Defenbaugh to Sweetser, and also the amount Isaac Defenbaugh agreed to pay on the Hapgood notes and mortgages,) and the taxes that have accrued on the land, within ninety days from the date of the decree, it shall thenceforth stand absolutely debarred and foreclosed of and from all rights, title and interest, and equity of redemption, in the quarter section of land.   It was also further ordered, that if this money was not paid by the bank to complainants, they should have leave to file a supplemental bill in this cause, foreclosing the mortgage made by Allen Walters, since

deceased, to Sweetser, it having been found by the decree that complainants were the holders of the Walters notes and mortgages, as assignees of Sweetser. This decree was affirmed in the Appellate Court for the Second District, where the bank assigned errors, and where Sweetser also assigned for error that the circuit court erred in dismissing his cross-bill. The bank brings the case to this court on appeal, but Sweetser has not assigned any errors in this court, and that branch of the case in which he is particularly interested on his cross-bill, is not considered in the opinion of the court.

Mr. S. S. Lawrence, for the appellant.

Messrs. Blanchard & Blanchard, for the appellees.

Mr. Justice Scott delivered the opinion of the Court:

The only question in this case in which the National bank is interested, is whether it acquired the title to the land in controversy under the levy and sale on the execution issued on its judgment against Isaac Defenbaugh, or whether the land, as against the claim of the bank, is still subject to the mortgage made by Isaac Defenbaugh to Sweetser, and to the sum he agreed to pay on the Hapgood notes. Other questions are made by the pleadings, but as to some of them the court made no decree, and as to others touching which the court did decree, as the parties affected are not now complaining, they will not here be considered.

Narrowing the discussion within the limits indicated, it will only be necessary to consider whether the decree made by the circuit court injuriously affects the bank,—the only party that assigns error in this court. If it does not, then it should be affirmed. Other suggestions of error not affecting the bank can not, of course, be considered on its appeal.

On looking into the record it is seen that Isaac Defenbaugh, through whom the bank claims the title to the property, never had any interest in it other than the equity of redemption. He bought the land from Sweetser and Stanchfield, subject to the Hapgood notes and mortgages, which it is conceded were then valid, prior liens upon it. It is not claimed that Isaac Defenbaugh ever paid one dollar upon the property. He occupied the land from October, 1871, (the time he purchased the equity of redemption,) until October, 1875, when he reconveyed the equity of redemption to Sweetser alone, in satisfaction of his mortgage for the purchase money, and of the sum he had agreed to pay on the Hapgood notes. During all that time he never paid one cent of the principal or interest of the purchase price, or any of the taxes accruing on the property. When it became apparent he could not pay for the land, by way of foreclosing or cutting off his equity of redemption, it was agreed that Isaac Defenbaugh should reconvey the land to Sweetser, which he did, and thereupon Sweetser released the mortgage of record. No money was paid. It was done in consideration the mortgagor should be discharged from his obligation to pay for the land—nothing else. The bank was in no way injured by the release that was entered of record. It was in no manner deceived by it, nor induced to take any action it would not otherwise have done. Had the release not been entered, it would not be claimed the bank could obtain any title under the levy and sale without paying what its judgment debtor would have to pay before he could have become the owner of the land. The mere fact satisfaction was inadvertently entered on the record did not and could not change the equities of the parties concerned. It was far less expensive to foreclose the equity of redemption which Isaac Defenbaugh had in the property, by a voluntary reconveyance, as was done, than by decree of court. It was better for the interests of the bank, if it intended to redeem the property from the prior incumbrances

resting upon it, that its judgment might attach to the equitable estate of the mortgagor in it.

This case, although not analogous in its facts with *Campbell* v. *Trotter*, 100 Ill. 281, is within the just principle of that case. All the bank is equitably entitled to by its levy and sale, is the interest Defenbaugh had in the property. That was absolutely nothing, for he never paid any portion of the purchase price. Standing in his shoes the bank occupies no better position than he did. Before the bank can obtain any title to the property, it must pay what Defenbaugh was obligated to pay as purchase money, and taxes accruing on the land. The suggestion the bank can take the property as the property of its judgment debtor, discharged from the prior subsisting liens thereon for the purchase money, has absolutely nothing in its support, either in law or justice.

The taxes accruing on the property were a prior lien, which the bank's debtor was obligated to pay, and they follow the property. It is a matter of no consequence whether the taxes were paid by King & Hamilton or Sweetser. Payment of the taxes was necessary to preserve the property for the benefit of all concerned,—the bank as well as others,—and it was not error to charge the property with their payment, and whoever obtains the property must take it with that incumbrance resting upon it.

It may be the decree requires the payment to the original complainants of more money than they are entitled to receive from the property, as between them and Sweetser. Perhaps all they are entitled to receive is the $4400 due from the estate of Walters, with the interest and the taxes they actually paid on the property. But of that no one can complain but Sweetser, and he has assigned no cross-errors in this court. The bank is in no way interested in adjusting the equities touching the sum secured on the property, as between

the original complainants and Sweetser.  By the decree the bank was required to pay no more than should be paid to complainants, King & Hamilton, and to Sweetser, and so far as it is concerned it matters little to whom the court directed it to be paid.  In no event can the bank obtain title to the property until it shall have paid all that Isaac Defenbaugh was obligated to pay for the land, and the decree does not require it to do more.

It is said it was error to decree a strict foreclosure in this case.  As this decree is understood, it does not purport to foreclose any of the mortgages on the property.  That portion of the prayer of the bill asking for a foreclosure of the mortgages does not seem to have been allowed.  It appears the amount due from Isaac Defenbaugh on the property for the purchase money, interest and taxes, is more than its actual value.  All the decree does is to declare that unless the bank shall, within ninety days, pay the amount that would have been due from Defenbaugh, it shall thenceforth stand absolutely debarred and foreclosed of and from all right, title and interest, and equity of redemption, in and to the land.  Ninety days was a reasonable time in which to pay the money.  Although the specific relief asked was not granted, it was proper, under the general prayer for such relief as the facts warranted, to decree as was done.

No error appearing in the record which injuriously affects the bank, which is the only party assigning error in this court, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*