WILLIAM S. DUNHAM, Plaintiff in Error, *vs.* ADYLINE D. SLAUGHTER *et al.* Defendants in Error.

*Opinion filed June 24, 1915—Rehearing denied October 7, 1915.*

1. WILLS—*when devisees may elect to re-convert money into land.* A provision in a will for the sale of realty and the distribution of the proceeds among the devisees is a bequest of money and not a devise of land, but the devisees may elect to take the land instead of the money, provided all the devisees agree to such re-conversion.

2. SPECIFIC PERFORMANCE—*when remedy by specific performance is available.* One who by agreement quit-claims his interest in an estate which includes land may maintain a bill for specific performance of his contract as a vendor of realty, and the fact that a part of the contract relates to the sale of his interest in the personalty does not exclude him from this remedy.

3. SAME—*what may be provided by way of a penalty.* In decreeing specific performance of a contract to purchase the interest of a devisee for a stipulated sum, the court may provide, as a penalty for non-performance within the time specified, a payment of interest to the date of the decree.

4. JURISDICTION—*when circuit court does not invade probate jurisdiction.* In requiring specific performance of a contract by two of the heirs and devisees to purchase the interest of the other, who agreed not to contest the probate of the will, the circuit court does not assume to administer upon any part of the estate, notwithstanding the contract requires the purchasers, as executrices under the will, to turn over certain assets of the estate to the ven-

dor ·within five days after they are appointed · executrices, where the estate was in such condition that they could have carried out the contract by applying to the probate court for an order of partial distribution.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Logan county; the Hon. T. M. HARRIS, ·Judge, presiding.

BEACH & TRAPP, and BEVAN & BEVAN, for plaintiff in error.

HUMPHREY & ANDERSON, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Plaintiff in error, William S. Dunham, filed his bill in the circuit court of Logan county for the specific performance of a contract entered into between him and Adyline D. Slaughter and Kate D. Huston, the defendants in error. The circuit court entered a decree in accordance with the prayer of the bill. The decree was reversed by the Appellate Court for the Third District, and the record is brought here for further review by writ of *certiorari.*

William S. Dunham, Mrs. Slaughter and Mrs. Huston are brother and sisters, being the only children and only heirs-at-law of Martha E. Dunham, who died testate April 15, 1912, at her home in Atlanta, Illinois. By her last will and testament Mrs. Dunham, after bequeathing bank shares of the par value of $1500 to certain of her grandchildren and articles of jewelry to her daughter Mrs. Huston and her grand-daughter Adah D. Huston, bequeathed to Mrs. Slaughter the sum of $15,000, to Mrs. Huston the sum of $16,000, and bequeathed and devised the residue of her estate to William S. Dunham, Mrs. Slaughter and Mrs. Huston in equal parts. The proof discloses, and the decree of the circuit court finds, that Mrs. Dunham left an estate of

the value of $103,000, included in which was real estate of
the value of about $11,000.  Mrs. Slaughter and Mrs. Hus-
ton were named as executrices in the will.  Dunham was
dissatisfied with the terms of the will, and claimed that his
mother was mentally incapable of making a will and that
undue influence had been exercised over her.  On April 30,
1912, Mrs. Slaughter and Mrs. Huston employed Donald
McCormick, formerly county judge of Logan county and
then a member of the firm of McCormick & Murphy, to
represent them in the matter of the probate of the will.  By
reason of the fact that Dunham was claiming that the will
was invalid and had taken steps to resist its probate, the
hearing on the probate of the will was delayed until June
15, 1912.  Prior to that date there had been some discus-
sion between Dunham and his sisters relative to a settle-
ment of their differences, and on that day they all three
went to the city of Lincoln and together went to the office
of Judge McCormick.  Dunham remained there a few min-
utes and then left, stating that he could be found at the
office of his attorneys, Beach & Trapp.  Mrs. Slaughter
and Mrs. Huston then directed Judge McCormick to make
their brother a proposition of settlement.  This he did by
going to the office of Beach & Trapp and there communicat-
ing the offer to him.  This was shortly after eight o'clock
in the morning.  The first proposition was rejected and ne-
gotiations were carried on until about twelve o'clock, Judge
McCormick carrying on all the negotiations between the
parties and Mrs. Slaughter and Mrs. Huston all the time
remaining in his office while Dunham remained in the office
of his attorneys, about two blocks away.  About twelve
o'clock an agreement was reached between them whereby
a complete settlement was made with Dunham in reference
to his interest in his mother's estate and all objections to
the probate of the will were to be withdrawn.  When the
agreement was reached Dunham went to the office of Mc-
Cormick & Murphy, where Judge McCormick reduced the

agreement to writing and it was signed in triplicate. The agreement thus entered into is as follows:

"This contract and agreement, made in triplicate, this 15th day of June, 1912, between William S. Dunham, of Atlanta, Illinois, hereinafter called the party of the first part, and Adyline Slaughter, of Atlanta, Illinois, and Kate D. Huston, of the city of Chicago, Illinois, hereinafter called parties of the second part:

"*Witnesseth:* That for the purpose of an amicable and mutual agreement, adjustment and settlement of the rights of the respective parties to this agreement amongst themselves and without resort to litigation in the courts in the estate of Martha E. Dunham, deceased, the mother to all the parties to this contract, the parties to this contract have agreed as follows:

"First party hereby agrees to receive and adopt in full settlement of any and all rights, claims, interest or demand whatsoever he may now or hereafter have in and to a distributive share in the estate of Martha E. Dunham, deceased, either as heir-at-law, legatee or devisee under her purported last will and testament now on file in the office of the clerk of the county court of Logan county, Illinois, the sum of $25,000, to be paid to him within five days after the appointment and qualification of second parties as executors of the purported last will and testament of the said Martha E. Dunham, deceased, by said second parties, out of the following assets of said estate, to-wit:

1 U. S. government four per cent reg. bond, market value.$11,400
1 U. S. government four per cent. reg. bond, market value.   5,700
Stubblefield note, with accrued interest to date........... 10,160
                                                            ―――――――
                                                            $27,260

by proper indorsement and assignment by said second parties to first party, upon first party first executing and acknowledging and delivering to second parties a good and sufficient quit-claim deed to all of first party's right, title and interest to any and all real estate owned by Martha E. Dunham at the date of her death or that she might be entitled to thereafter, and a good and sufficient receipt in full of all share of first party as distributee, heir, legatee or devisee under the will of Martha E. Dunham, deceased, and by payment over, in order to equalize the difference between the said securities aforesaid, valued at $27,260, and the said sum of $25,000 herein agreed upon, to second parties of the sum of $2260 in cash or check.

"It is further agreed that there shall be paid by first party to second parties the further sum of $75 as accrued interest on the U. S. bonds aforesaid, not heretofore taken into account herein, which, together with the said $2260 aforesaid, would make the

total sum due from first party to second parties to equalize, etc., the sum of $2330.

"Upon the execution of this contract first party agrees to withdraw all resistance to the probate of the last will of Martha E. Dunham, deceased, and agrees to sign the bond of second parties, as surety to said second parties as executrices, etc.

"It is expressly understood that the acceptance of the $25,000 aforesaid by first party in no way affects his right to be reimbursed out of the estate of Martha E. Dunham, deceased, by second parties for all moneys paid out by first party in payment of any *bona fide* claim against her said estate.

"It is further agreed that any one of the several contracts hereby made in triplicate may be filed for record in any court of competent jurisdiction having the settlement of the estate of Martha E. Dunham, deceased, and may be offered in. evidence in such court in any proceeding in which the same may become material, without objection thereto by any of the parties hereto.

"In witness whereof the parties hereto have set their respective hands and seals the day and year first above written.

(Seal) WILLIAM S. DUNHAM,
(Seal) ADYLINE D. SLAUGHTER,
(Seal) KATE D. HUSTON."

That afternoon Dunham and his sisters went together before the judge of the probate court, the will was admitted to probate, and the executrices qualified by giving a bond in the sum of $3000, with Dunham as surety. The receipt to be signed by Dunham and the quit-claim deed provided for by the contract were drawn by Judge McCormick. On June 17, 1912, Dunham and his wife executed the quit-claim deed, and he executed the receipt for his full distributive share in the estate and tendered the same to Mrs. Huston, together with his check for $2330, being the amount of money provided in the contract to be paid by him to his sisters, and she accepted the same. Mrs. Slaughter refused to accept and declined to comply with her part of the agreement. The next day Dunham made a second tender of a similar receipt, and a deed with a more definite description of the land, a check for $2260 and $75 in gold. This tender Mrs. Slaughter also refused. Mrs. Huston retained the receipt, deed and check given her by Dunham until some time after he had filed his bill for specific performance, and

the evidence shows that at least up until the time the bill was filed she constantly urged her sister to accept the receipt, deed and check and to join with her in complying with the terms of their contract, and expressed deep regret that Mrs. Slaughter had seen fit to repudiate their agreement.

By his bill, after reciting the death of his mother, Dunham set up the contract thus entered into, recited the tender, and the acceptance of the same on the part of Mrs. Huston and the refusal of Mrs. Slaughter to so accept or perform, and prayed that his sisters be decreed to specifically perform the contract thus entered into. Mrs. Slaughter and Mrs. Huston were also made defendants to the bill as executrices. In answering the bill, both in their individual capacity and as executrices, Mrs. Slaughter and Mrs. Huston each severally alleged the fact to be that she signed the agreement under duress and by reason of false representations and threats made to her by Dunham regarding her deceased mother, her sister and herself. During the pendency of the suit the Stubblefield note was paid. It was disclosed that the indebtedness of the estate amounted to less than $1000, being a grocery bill of $50 or $60, the expenses of the last illness and the funeral expenses.

After reciting the death of Mrs. Dunham, the amount of the estate left by her, the amount of the debts and the various provisions of the will, the decree found that William S. Dunham in good faith employed counsel to resist the probate of the will, and with that in view a settlement was effected, as set forth in the bill; that the written agreement made between the parties was entered into freely and voluntarily; that the parties understood it and that it was reasonable; that Dunham has executed his part of the agreement, and that Mrs. Slaughter and Mrs. Huston should be required on their part to perform said agreement in all things except with reference to the Stubblefield note, and as to that they should pay the sum of $10,596 instead, that being the sum paid to them upon the maturity of the note;

that Mrs. Slaughter and Mrs. Huston should pay Dunham the sum of $566.66, interest to the date of the decree, and that they should pay interest on those sums from the date of the decree until paid, and that in the event they did not pay these sums and deliver the United States bonds within sixty days, they should then pay the sum of $26,024.59, with interest at the rate of five per cent from the date of the decree. The ordering part of the decree then concluded in accordance with the findings.

It is first contended that a court of chancery has no jurisdiction to entertain this bill as the contract relied upon affects personal property only, and that specific performance is not the proper remedy unless there are peculiar circumstances from which it can be seen that damages in money could not be readily ascertained and secured in a court of law. Mrs. Dunham died seized of real estate of the value of $11,000. By her will she provided that all of the real estate which she owned in Atlanta, and any other real estate which she might own at the time of her death, should be sold by her executrices, and the residuary bequest and devise was made to her three children after the conversion of her real estate into money. The title to her real estate was not placed in the executrices, and this provision of the will did not operate to vest title in them. It was a mere direction to sell, and vested in them only the power to convert the real estate into money. It has many times been held that a devise of real estate which by the provisions of a will is to be converted into money and the money distributed among the devisees is to be treated as a bequest of money and not a devise of land, but it has been as frequently held that the devisees may elect to take the land itself instead of the money. The character of the devise can not be thus changed, however, from money to land without the concurrence of all the devisees. (*Darst* v. *Swearingen,* 224 Ill. 229.) By entering into this settlement contract, Dunham, Mrs. Slaughter and Mrs. Huston, constituting, as

they did, all of the residuary devisees of Mrs. Dunham, effectually elected to re-convert this property from personalty into real estate and to take the land itself instead of the proceeds from a sale thereof. (*Ridgeway* v. *Underwood,* 67 Ill. 419.) Having thus elected, this contract is, in part at least, in reference to the sale of real estate. Counsel for Mrs. Slaughter and Mrs. Huston concede that a vendor of real estate has the right to maintain a bill for specific performance of his contract, and that is undoubtedly the law. William S. Dunham was the vendor of an undivided one-third of the real estate of which his mother died seized, and the fact that a part of the contract related to a sale of his interest in the personal estate of his mother and his abandonment of opposition to the probate. of the will does not exclude him from this remedy, as an agreement to convey real estate and to transfer personal property will be specifically enforced in equity, both as to the realty and the personalty. *Leach* v. *Fobes,* 11 Gray, (Mass.) 506.

To sustain their charge that the contract was procured by the fraud and coercion of William S. Dunham, proof was made on the part of the defendants to the bill that Dunham had threatened that if his sisters did not make a settlement agreeable to him he would prove that their mother was insane and unduly influenced in. executing the paper purporting to be her last will and testament, and that he would have his sister Mrs. Slaughter sent to the penitentiary for some violation of the law of which he claimed to have proof. It was shown that Mrs. Huston's health was somewhat delicate and that she was in a highly nervous condition, and it is claimed that the contract was entered into in order to save her from serious consequences on account of the condition of her health and to relieve Mrs. Slaughter from the anxiety caused by the threat to have her placed in prison. The circuit court found that the agreement was entered into freely and voluntarily, that the parties understood it, and that it was reasonable, and in

this finding we concur. During all the time that the negotiations were carried on between Dunham and his sisters on the day the contract was entered into Mrs. Slaughter and Mrs. Huston remained in the office of Judge McCormick, and he conducted all the negotiations, going from his own office to that of Beach & Trapp, where Dunham was. The evidence discloses that Judge McCormick strongly advised his clients to enter into this contract as it was finally agreed upon, and there is not the slightest evidence that anything actuated either of the parties except to arrive at an agreement as favorable as possible to them. That Mrs. Slaughter was not terrified by the alleged threat of her brother is evident from her own testimony, as she says she had changed her mind and had determined before the will was probated on that day to repudiate the contract, and that she had never intended to comply with its provisions. That the agreement which was finally reached was entirely satisfactory to Mrs. Huston is evident from her behavior thereafter and the many letters written to her brother, in which she deeply deplored the attitude her sister had assumed and earnestly expressed the hope that she would finally conclude to do the right thing and live up to her agreement.

It is suggested that the consideration expressed in this contract is so inadequate that a court of equity should refuse to decree its specific performance. Specific performance will be decreed in a case of this kind without inquiring into the adequacy of the consideration; (*Leach* v. *Fobes, supra;*) but even if this matter were open for consideration the contention would be without force, as under all the circumstances the consideration was fair and adequate.

It is contended that to affirm the decree of the circuit court would be to invade the jurisdiction of the probate court and would result in the circuit court taking upon itself the settlement of a part of this estate. In requiring the specific performance of this contract the circuit court in no sense assumed to administer upon any part of this

estate. Nor was it requiring Mrs. Slaughter and Mrs. Huston, as it is claimed, to do something beyond their power. It is true that by the terms of this contract Mrs. Slaughter and Mrs. Huston were required, within five days after they were appointed executrices, to turn over to their brother certain assets of the estate, and it is also true that these executrices became officers of the county court of Logan county and were subject to its order; but it was shown that Mrs. Dunham left an estate of the value of at least $103,000 and that there were no debts, and there was no valid reason why a partial distribution of this estate should not have been made. Upon the execution of this contract Mrs. Slaughter and Mrs. Huston became the equitable owners of the whole of this estate except that portion bequeathed to the grandchildren. The statute provides that whenever it shall appear that there are sufficient assets to satisfy the demands against an estate, the court shall order the payment of all the legacies mentioned in the will of the testator. (Hurd's Stat. 1913, chap. 3, sec. 115.) It was within the power of the executrices, who as individuals entered into this contract, to make this showing and to apply to the probate court for an order of distribution. This they did not do, but, on the contrary, having secured the probate of the will without contest and having procured their brother to go upon their bond, Mrs. Slaughter immediately repudiated the contract and left her sister helpless to carry it out on her part. As it was within their power to perform, the circuit court did not err in decreeing specific performance, and the decree correctly provided, by way of penalty, that in case they did not perform within the time specified they should pay their brother the sum of $26,024.69, that being the sum of $25,000 and interest to the date of the decree.

The judgment of the Appellate Court is reversed and the decree of the circuit court affirmed.

*Judgment reversed.*