(No. 29603.—

W. S. HARRISON, Trustee, *et al., vs.* HELENA KAMP *et al.,* Appellees.—(KATHRYN KRENZ *et al.,* Appellants.)

*Opinion filed Sept. 18, 1946—Rehearing denied November 14, 1946.*

STONE, J., took no part.

W. C. OVERBECK, of Henry, and CLYDE MITCHELL, and FREMONT M. KAUFMAN, both of LaSalle, for appellants.

ARBER, SWAIN & JOHNSON, (FREDERICK V. ARBER, of counsel,) both of Peoria, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

A decree of the circuit court of Putnam county ordered partition of an improved parcel of real estate. From this decree, seven plaintiffs prosecute this appeal, a freehold being necessarily involved.

Walter S. Harrison was the successful bidder at a mortgage foreclosure sale on December 15, 1933. The purchase was made in behalf of the legal owners and holders of mortgage notes aggregating $32,000, secured by

the property foreclosed. A master's deed was obtained on July 23, 1935, and caused to be placed of record. Although title was taken in Harrison's name, individually, it is admitted that he took title as trustee for the noteholders, and at their direction. Thereafter, on August 8, 1935, a trust agreement was entered into between the noteholders and Harrison, as trustee. By the terms of the agreement, the trustee was empowered to control and manage the property, to lease it from year to year, to collect rents, pay insurance premiums and taxes, and keep the property in a substantial state of repair. The agreement provides that upon receiving the written consent and on the direction of the former noteholders, or their assignees, representing seventy-five per cent of the total amount, the trustee shall sell the real estate constituting the *corpus* of the trust, in whole or in part, and upon payment of the expenses of the trust, make prorata distribution of the balance. The trustee, it is provided, shall deliver to the former noteholders a "Participation Trust Certificate" setting forth their interest in the trust estate. He is required to furnish each of the former noteholders an annual written report on or about March 1 and, at this time, make distribution of any moneys the beneficiaries are then entitled to receive. Paragraph (i) declares that the interest of each of the former owners of the mortgage notes, and their assignees, in an amount to be received under the trust, shall be determined by giving to him the proportion which his principal amount bears to the total principal amount, represented by the signers, and "The holder of a Participation Trust Certificate shall have no interest, legal or equitable, in any specific property, but his right hereunder shall be to share in the proceeds of said Trust as herein provided, and his right and interest shall, for the purposes of inheritance and transmission, or otherwise, be taken and considered as personal property." The purpose of the trust is described as the protection and preservation of the beneficiaries from

loss on their original investment. Paragraph (k) adds, "It is the desire of the First Parties [owners of mortgage notes] that the property be sold as soon as conditions warrant, distribution of the proceeds be made, and the Trust terminated. Should seventy-five (75%) per cent of the aggregate represented by the First Parties or their assignees agree to accept an offer or offers received by the Trustee * * *, for the purchase of said real estate or any part or parts thereof, then and in such case, said Trustee, * * * shall be authorized, to accept such offer or offers, and give, execute and deliver to the purchaser or purchasers thereof a good and sufficient deed or deeds of conveyance thereto." The agreement was signed by twenty-six persons, parties of the first part, and by Harrison. The agreement was not signed by the executor of the will of Catherine G. Peterman, deceased, owner of a note for $500, although it was signed by Walter C. Overbeck, as attorney in fact, for Fred Potter, as executor. Michael Ziegler, the owner of a note for $1000, did not sign the agreement until 1943. The trust certificates recite that the holders have no interest, legal or equitable, in any specific property, but only the right to the proceeds of the trust, as provided in the declaration of trust.

Between August 8, 1935, and the fall of 1943, several owners of notes, who signed the trust agreement, died. None of the devisees or legatees, or heirs, signed the trust agreement. On January 4, 1944, Harrison, as trustee, together with the owners of all participation trust certificates, except two, namely, the estate of Catherine Peterman and the estate of Michael Ziegler, holding in the aggregate a 3/64 interest, filed their complaint in the circuit court of Putnam county, seeking a construction of the trust agreement. Later, on June 15, 1944, an amended complaint was filed, setting out the interests of the holders of trust certificates based upon the construction of the agreement that a valid equitable conversion was effected. Plaintiffs

alleged that since the delivery of the master's deed and the execution of the trust agreement Harrison, as trustee, had a purchaser for the assets of the trust at a price acceptable to each *cestui,* but, the agreement not containing a specific termination date, a question had arisen with respect to the power of the trustee to sell the real estate. The relief sought, so far as relevant, was that the court (1) decree the validity of the trust and confirm Harrison's title, as trustee, for the benefit of the certificate holders, and (2) adjudge that the owners of the trust certificates have no interest in the real estate itself and, conversely, that their interest is personalty only, and in the proceeds of the sale of the property.

Fred Potter, as executor of the will of Catherine G. Peterman, deceased, answered, denying that he executed an instrument authorizing Overbeck to sign his name, as executor, by Overbeck, as his attorney in fact, and averring that he could not delegate his fiduciary duties to an agent or attorney in fact. Answering further, Potter averred that the persons named in the amended complaint owned undivided equitable interests in the real estate involved. The answer sets forth the alleged owners of equitable interests in the land, these owners being different from those named in the amended complaint as owners of trust certificates, to the extent that certificates were assigned and several persons died testate or intestate, and names their successors in interest. The answer avers, further, that Harrison has no power or authority to sell the real estate except to convey an undivided interest therein to the persons named in the agreement in the undivided proportions set forth, and to those who succeeded by will or descent to the rights of an original owner of an interest in the real estate.

Plaintiffs replied, denying that Potter, as executor, did not sign the trust agreement either by himself or his duly authorized agent and attorney in fact, and adding that

they are not advised when Michael Ziegler signed the agreement but that he did sign it.

Subsequently, Potter, as executor of Catherine Peterman's will, with the parties in interest under her will joining therein, and Augusta Ziegler, as executrix of the will of Michael Ziegler, deceased, with the heirs, devisees and legatees in the will joining therein, filed a cross complaint. By this pleading, the cross plaintiffs alleged that the trust agreement failed to create an equitable conversion of the land involved, because it was not signed by all persons having an interest in the land, and for the reason the agreement contains no specific termination date, thereby violating the rule against perpetuities; that an equitable conversion having failed and the agreement being invalid, the persons named in the cross complaint are equitable owners of the real estate, and their interests are not personal property. The cross complaint describes the fractional interest of all parties, including Potter, as executor of the will of Catherine Peterman, in trust for the persons named in the will, and also including 2/64 to Augusta Ziegler as life tenant under the will of Michael Ziegler, deceased, with remainder to his children. Additional allegations are that all the legatees and devisees named in the will of Catherine Peterman had conveyed their interest by quitclaim deed to Potter, as executor, in trust, to sell and dispose of their undivided equitable interest in the real estate.

All but one of the parties plaintiff in the amended complaint, representing 58/64 of the total interests involved, answered the cross complaint, denying that the trust agreement was not executed by all parties in interest, but if signed by an agent or attorney in fact in behalf of a principal who did not have such authority, the parties in interest ratified the act of execution by accepting the participation trust certificates issued by the trustee and annually accepting dividends from him, and were estopped to challenge the validity of the execution. The answer set

forth special defenses, first, that the agreement was signed by Potter, as executor, by Overbeck, his attorney in fact, at the specific direction of the executor, and its execution was but the performance of a ministerial act, and all other persons having joined in the execution, the agreement is valid, an equitable conversion of the real estate occurred, and the interest of the parties thereto is personal property only. Special defenses of ratification in acceptance of the trust certificate and the annual dividend check and *laches* in having abided by the agreement for nearly ten years with respect to this 1/64 interest were also interposed. A further special defense is that it is immaterial when Michael Ziegler executed the agreement so long as he did so and accepted his trust certificate and his share of the rents.

The cross plaintiffs did not file a reply to the answer of cross defendants, but made a motion for judgment on the pleadings, assigning as reasons (1) it appears from the face of the cross complaint and also from the original and amended complaint that no time is stated for the termination of the trust and, hence, the trust agreement is null and void, and no equitable conversion occurred for the reason that the agreement violates the rule against perpetuities and (2) it appears from the answer filed by cross defendants that the allegations of the cross complaint to the effect the trust agreement did not state a definite time, or any time, for the termination of the trust, were not denied, and therefore taken as confessed against the cross defendants answering the cross complaint. Accordingly, the cross plaintiffs asked that the court direct Harrison to render an accounting, and that partition be ordered. This motion was allowed and a decree for partition was entered on February 25, 1946. The court found that the trust agreement did not create or effect an equitable conversion of the real estate described; that Harrison holds the legal title to the property, as trustee, for the benefit of cross plaintiffs and cross defendants, as alleged in the

cross complaint, and that the persons named are equitable owners of the real estate, and entitled to partition. This appeal followed.

Appellants are Kathryn Krenz, Bess Davidson, Jennie McKirgan and four others. Harrison, the trustee, has not appealed. The appellees, Fred W. Potter, as executor of the will of Catherine G. Peterman, and others, have filed a motion to dismiss the appeal, appellants have replied with countersuggestions, and the motion to dismiss has been taken with the case. Appellees' motion rests upon the ground that no one of the appellants has an appealable interest in the cause. They point out that Kathryn Krenz and four other appellants, by the decree, are awarded the same distributive share in the proceeds of a sale in partition as they would receive if the decree be reversed and a sale ordered by Harrison, as trustee. Accordingly, they contend that appellants are not entitled to a review since they cannot show they have been injured by the decree rendered or will be benefited by its reversal, or are competent to release errors. The rule invoked applies to persons who are not parties to the record. (*Almon* v. *American Car Loading Corp.* 380 Ill. 524; *People ex rel. Altorfer* v. *City of Peoria,* 378 Ill. 572; *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236.) The seven appellants were all parties of record and could, as a matter of right, prosecute an appeal if they deemed themselves aggrieved by the decree. Whether they were actually so aggrieved has no bearing upon their right to appeal. It may be conceded that as to the five appellants who would receive the same proportion of the proceeds of a sale by the trustee as in a partition sale, the questions presented are moot, but they are entitled to the determination of whether their claim is moot.

Appellants direct attention to the portion of the decree vesting a 1/64 interest in George Golden, subject to a contract for the income to him for life, with the remainder in

Jennie McKirgen and Bess Davidson equally. The decree also vested a 1/256 interest in Bess Davidson, a 1/256 interest in Jennie McKirgan, and 1/384 each in Margaret, Charles and Robert Bowers. It appears that Phoebe Golden owned notes having a par value of $1000 and, upon signing the trust agreement, received participation certificates representing a 2/64 interest. She died before this litigation was instituted, leaving as her surviving heirs-at-law, her husband, George Golden, and five nieces and nephews, Jennie McKirgan, Bess Davidson, Margaret, Charles and Robert Bowers. According to the amended complaint, the owners and holders of the trust certificates, so far as pertinent here, are Bess Davidson, subject to the life estate of George Golden therein, 1/64, and Jennie McKirgan, subject to the life estate of George Golden, 1/64. This allocation of interest rests upon the assumption that when Phoebe Golden died intestate her interest in the trust was personal property and George Golden, her husband, became its sole owner and that, thereafter, he assigned to Bess Davidson and Jennie McKirgan his entire interest, reserving to himself a life income. The decree, on the other hand, is predicated upon the proposition that Phoebe Golden's interest was real estate and, upon her death, descended one half to her husband, George, and one half to her five nieces and nephews as follows: one eighth each to Bess Davidson and Jennie McKirgan and one twelfth each to Margaret, Charles and Robert Bowers, and that George Golden's assignment conveyed to Bess Davidson and Jennie McKirgan an interest in one half of his deceased wife's interest in the trust instead of her entire interest. Upon the basis of these facts, appellees insist that Bess Davidson and Jennie McKirgan are not injured by the decree but are, in fact, benefited, since they were each awarded a 1/256 interest in fee and that a reversal would harm rather than benefit them. Appellants reply that their interests are less under the decree of partition than they would be under a

sale by the trustee. Their view is that if their interests were decreed to be interests in personal property, only, and a sale be made by the trustee, each of them will receive a 1/64 interest, subject to the life estate of George Golden, and that this 1/64 interest in fee, subject to the life estate, is greater than a 1/256 in fee, together with a joint remainder in 1/64, the latter subject, in the meantime, to the life interest of George Golden. A variance in dollars and cents between the interest claimed by Bess Davidson and Jennie McKirgan and the interest awarded them by the decree is apparent. An attempt to determine the precise amount of the difference would, however, be sheer speculation. In any event, they consider themselves aggrieved by the decree even though it be but to a slight degree.

Moreover, appellants did not receive the relief asked. They sought, among other things, a decree finding that Harrison holds title to the real estate, as trustee, for the benefit of the certificate holders; that the trust agreement is valid; that the certificate holders' interests are in personal property only and in the proceeds of the sale of the real estate, and that, upon receiving directions from holders of seventy-five per cent of the aggregate amount of the certificates, the trustee accept offers for a sale of the real estate, and deliver to the purchaser a deed of conveyance. Appellants were awarded no part of this relief. The determination of their rights and the character of their interests, if any, created by the trust agreement, are more than academic questions. The motion to dismiss the appeal must be denied.

Appellants' first contention is that appellees' motion for judgment on the pleadings is confined to the single question of whether the trust agreement comes within the rule against perpetuities. The argument is that appellees, instead of replying to appellants' answer to the cross complaint, filed a motion for judgment on the pleadings assigning as reason therefor that the challenged trust agreement

contained no specific termination date and, hence, was void as a violation of the rule against perpetuities. Section 42(3) of the Civil Practice Act (Ill. Rev. Stat. 1945, chap. 110, par. 166,) is invoked to support the argument. This section provides that all defects in pleadings, either in form or substance, not objected to in the trial court, shall be deemed to be waived. Recourse to the pleadings and, in particular, appellants' amended complaint, appellees' answer, appellants' reply, appellees' cross complaint and appellants' answer thereto disclose that no new matters or facts were pleaded to require a reply to appellants' answer to the cross complaint. The pleadings raise issues of law which are open to consideration upon this appeal. The fact that the motion for judgment urged a violation of the rule against perpetuities as a basis for relief does not mean that this is the only question open here. The decree sets forth merely that the trust agreement did not create or effect an equitable conversion of the lands described from real estate into personal estate. It is the decree, of course, and not the reasons motivating the chancellor in entering, which is under review, and the decree, if right, will be affirmed. (*Bullman* v. *Cooper*, 362 Ill. 469; *Pelouze* v. *Slaughter*, 241 Ill. 215; *Pennsylvania Co.* v. *Keane*, 143 Ill. 172.) The motion for judgment raised the sufficiency of the pleadings, as a matter of law, to entitle the original plaintiffs to the relief sought by their complaint and as to whether cross defendants' answer set up such a defense to the cross complaint as to entitle cross defendants to a hearing on the merits.

Appellants contend that the chancellor erred in holding that the agreement violated the rule against perpetuities. It must be noted, again, that the decree does not so hold. The contention, although well taken, does not aid appellants. The trustee was vested with a general power of sale, although a definite time of sale was not prescribed. Under such circumstances, a duty devolves upon the trustee

to sell within a reasonable period of time. Where no time is mentioned incident to a general direction to sell, a requirement that the trustee sell within a reasonable time, coupled with the inherent power of a court of equity to require a sale within a reasonable time, prevents the rule against perpetuities from operating. (*Smith* v. *Renne,* 382 Ill. 26.) Again, the rule against perpetuities applies only to contingent future interests, and not to vested interests. The rule is applicable only to the beginning of the interest and is not involved in the postponement of its enjoyment. (*McKibben* v. *Pioneer Trust & Savings Bank,* 365 Ill. 369.) Appellees concede the correctness of the rule invoked but point out that it has no application here. Appellants' assertion that the trustee was vested with the legal and equitable title to the real estate rests upon the erroneous premise that a valid equitable conversion was effected by the trust agreement.

To sustain the decree, appellees maintain, first, that since the trust agreement was not signed by all the beneficiaries under the trust, there was no equitable conversion. This argument is based upon the proposition that an executor cannot legally delegate to a third person the authority to sign his name as executor. They argue further that the participation certificate issued to Potter, as executor, evidences the 1/64 interest which the estate of Catherine Peterman owned in the land, and the acceptance of the net rents annually was merely the acceptance of money owing the estate as the owner of an equitable undivided 1/64 of the trust property. Again, Michael Ziegler did not sign the agreement until 1943. Appellants, on the other hand, point out that both Michael Ziegler and Fred W. Potter, as executor, not only accepted from the trustee participation certificates but, also, that they received and accepted from the trustee the net income accruing on account of their ownership of such beneficial interest, and invoke the rule that a party named in a contract may, by

his acts and conduct, be bound by its terms and provisions even though he does not sign the instrument. (*Soelzer* v. *Soelzer*, 382 Ill. 393.) It becomes unnecessary, however, to decide whether all the equitable owners of the land concurred and agreed to an equitable conversion of the real estate into personalty, (*Dunham* v. *Slaughter*, 268 Ill. 625; *Darst* v. *Swearingen*, 224 Ill. 229;) for the compelling reason that, in any event, an equitable conversion was not created, since the trust agreement states no time within which the trustee must sell the land and fixes no definite time when the trust shall terminate.

An equitable conversion is not effected where the trust agreement attempting to create an equitable conversion does not fix either a definite time for the sale of the land or make specific provision for the termination of the trust. (*Boddiker* v. *McPartlin*, 379 Ill. 567; *Yedor* v. *Chicago City Bank and Trust Co.* 376 Ill. 121; *Hazlett* v. *Moore*, 372 Ill. 192; *Rubin* v. *Bartel*, 371 Ill. 117; *Ashton* v. *Macqueen*, 361 Ill. 132; *Berg* v. *Brown*, 342 Ill. 639; *Fox* v. *Fox*, 250 Ill. 384.) In short, if the trust agreement lacks either of these essential requisites to effect an equitable conversion, the equitable title remains in the beneficiaries of the trust where it was at the time the trustee obtained title by the master's deed to him. The noteholders and their successors thus owned an undivided equitable interest in the land in the proportion that the aggregate par value of their notes bore to the principal indebtdness of $32,000, namely, an undivided 1/64 for each $500 of principal. The original noteholders, later holders of the participation certificates, owned the equitable title. The remedy by partition is available to the holder of an equitable estate as well as to the holder of a legal estate. In particular, partition, or a judicial sale if partition cannot be made, is permitted to equitable owners when the title to real property is in a trustee, and when no definite time has been set for the sale of the land. (*Boddiker* v. *McPartlin*, 379 Ill. 567;

*Yedor* v. *Chicago City Bank and Trust Co.* 376 Ill. 121.)
In the case last cited, a valid equitable conversion was
effected by a trust agreement, but subsequently became in-
effective, and the interest of the beneficiaries reverted to
an equitable interest in the real estate upon the expiration
of the time fixed by the agreement in which the trustee
was to sell. Here, not only is a clear and imperative direc-
tion to the trustee to sell wanting but a definite time for
the termination of the trust is also lacking.

Appellants contend, however, that a specific termination
date is not a condition precedent to the creation of a valid
private trust so long as the interests created thereunder are
vested. The insuperable difficulty with this contention is
that appellants erroneously assume that the trust agreement
created a valid equitable conversion and that the trustee
owned the legal title to the land and the beneficiaries were
entitled merely to the proceeds of the sale of the land. Har-
rison owned the legal title in trust, by operation of law,
and the noteholders were the owners of the equitable title.
The purpose of the trust has, in any event, been consum-
mated here, as in *Boddiker* v. *McPartlin,* 379 Ill. 569, "and
its continuance cannot be said to be for the benefit of the
bondholders."

Attention is directed to the statement on the participa-
tion certificates that they create only an interest in the
proceeds of the sale and not an interest in any specific prop-
erty. Manifestly, the trust certificates are ineffective in
this regard if, as a matter of law, an equitable conversion
was not effected by the trust agreement.

Appellants also contend that a person limited to an
interest in the proceeds of real estate cannot bring parti-
tion. (*Burbach* v. *Burbach,* 217 Ill. 547.) This argument
is beside the point for the reason that the noteholders did
not limit themselves to the proceeds of the real estate by a
valid agreement converting the real property into personalty.

Appellants contend that the real estate here is subject to an active trust and, consequently, is not the proper subject of partition. (*Smith* v. *Kelley,* 387 Ill. 213; *Burbach* v. *Burbach,* 217 Ill. 547.) In the case first cited, there was a valid trust agreement providing that the trustees acquire title to real estate for the benefit of the bondholders and acquire other outstanding bonds. These provisions made the trust active and, hence, it was not executed by section 3 of the Conveyance Act. In the present case, the master's deed vested the entire legal title in Harrison in trust for the benefit of the noteholders who became the owners of the equitable title. Section 3 of the Conveyance Act provides in effect that where any person stands seized of any lands for the use of any other person, the title shall be deemed to be in him that shall have such use. It is admitted Harrison bought such property by applying the respective notes on the property on the purchase price. Harrison would thus hold the property under such a use or trust as would vest the title in the several interested parties by virtue of the statute on uses.

Appellants' final contention requiring consideration is that failure to reply admits all new facts alleged and defenses properly pleaded in an answer. This contention is based upon allegations in the cross complaint concerning the mode of acquisition of both Elmer Melick and Anna Morgan of a 1/64 equitable interest in the real estate. Appellants insist that, if the interests of the parties be deemed equitable interests in the real estate, the chancellor erred in not finding that three named individuals are necessary parties and that each of them has a 1/160 interest in the real estate. Neither Melick nor Anna Morgan have appealed from the decree. If other persons were necessary parties, this fact does not in anywise affect the interests of the appellants, the only parties assigning error on the record. Our inquiry is limited to determining whether the decree

injuriously affects appellants. Since it does not, suggestions of error not affecting them will not be considered. *Freesen* v. *Scott County Drainage and Levee Dist.* 283 Ill. 536; *Agnew* v. *Fults,* 119 Ill. 296; *National Bank* v. *King,* 110 Ill. 254.

The decree of the circuit court of Putnam county is affirmed.

*Decree affirmed.*

Mr. JUSTICE STONE took no part in the consideration or decision of this case.