*In re* JAMES JOHNSON, Asserted To Be Mentally Retarded.—(THE DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, Petitioner-Appellant, *v.* JAMES JOHNSON, Respondent-Appellee.)

First District (2nd Division)    No. 76-444

Opinion filed August 30, 1977.—Rehearing denied November 21, 1977.

William J. Scott, Attorney General, of Chicago (William J. Fitzpatrick and Fredric J. Entin, Assistant Attorney Generals, of counsel), for appellant.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellee.

Zeva Schub, of Mental Health Legal Services, of Chicago (Edward B. Beis, of counsel), *amicus curiae.*

Mr. JUSTICE PERLIN delivered the opinion of the court:

A petition for the hospitalization of respondent, James Johnson, was filed on December 31, 1975, by the administrator of the nursing home (Meadows) in which respondent resided. (Ill. Rev. Stat. 1975, ch. 91½, par. 7—1.) Following a hearing on such petition, but prior to a final adjudication of respondent's need for hospitalization, the court below ordered the Illinois Department of Mental Health and Developmental Disabilities (Department) to transfer respondent within 24 hours from Chicago-Read Mental Health Center to a facility for the mentally retarded located in Kane, Lake or Cook County pending a hearing on respondent's need for hospitalization. The Department appeals from the circuit court's denial of its motion to vacate, alter or amend this order to transfer respondent. On appeal the Department contends that: (1) the court below had no jurisdiction to order the transfer of respondent, an involuntarily committed patient, from a Department facility for the mentally ill to a facility for the mentally retarded (Ill. Const. 1970, art. VI, §9; Ill. Rev. Stat. 1975, ch. 91½, par. 1—1 *et seq.*); (2) the circuit court's application of a consent order heretofore entered into by the Department in a prior case deprived respondent of his constitutional and statutory right to treatment (U.S. Const., amend. XIV; Ill. Rev. Stat. 1975, ch. 91½, pars. 7—1, 12—1 and 100—7); (3) authority to make "clinical decisions" including designation of the specific facility in which a subject shall be placed has been exclusively delegated to the Department; and (4) the circuit court's interpretation of a consent order heretofore entered into by the Department in a prior case potentially deprives persons suspected of being mentally retarded of the best available treatment.

Respondent and amicus curiae, the Mental Health Legal Services, maintain that the Department has no standing to bring this appeal and that the issues presented for review are moot.

On December 31, 1975, Byrn Witt, the administrator of Meadows, a nursing home for the mentally retarded in Rolling Meadows, Illinois, filed a petition with the circuit court of Cook County, Illinois, seeking the hospitalization of respondent. (Ill. Rev. Stat. 1975, ch. 91½, par. 7—1.) A certificate signed by a physician was attached to the petition. The petition alleged that during the months of November and December 1975 respondent, a resident of Meadows, had threatened and struck members of the Meadows staff and other residents, was "verbally abusive" and was "disoriented to time and place."

As a result of the petition, respondent was placed in the Chicago-Read Mental Health Center as an emergency admission pending a full hearing by the circuit court on his need for hospitalization. On January 5, 1976, a hearing was held in the circuit court to determine whether respondent was mentally retarded and in need of hospitalization. (Ill. Rev. Stat. 1975,

ch. 91½, par. 7—6.) The court ordered respondent to be diagnosed and evaluated by appropriate specialists arranged for by the Department and continued the hearing to January 26, 1976.

On January 5, 1976, however, a preliminary hearing was held to determine whether respondent was being improperly hospitalized in a facility for the mentally ill. At this hearing staff from the Department testified that prior to respondent's stay at Meadows he was known to be severely mentally retarded. Respondent had been hospitalized at Lincoln, a Department facility for the mentally retarded, for 11 years prior to his residence at Meadows. The court thereupon ordered that respondent "be placed in a facility for the mentally retarded located in Kane, Lake or Cook County, pending said hearing." The court further ordered that this transfer was to be effected "within twenty-four hours from 12:00 o'clock noon January 5, 1976." Respondent was then transferred to a facility for the mentally retarded in compliance with the court's order.

· On January 8, 1976, the court denied the Department's motion to vacate, alter or amend the January 5, 1976, order. At the hearing on January 26, 1976, respondent was found to be mentally retarded and in need of hospitalization. Thereupon he was ordered by the court to be hospitalized in a Department facility to be designated by the Department. On January 30, 1976, the Department filed its notice of interlocutory appeal from the court's denial on January 8, 1976, of its motion to vacate, alter or amend.

Initially respondent contends that since the Department is not a party to this suit and was neither aggrieved nor prejudiced by the order of the court below, the Department has no standing to bring this appeal. The Department maintains that it has a direct, immediate and substantial interest in the matter before this court and will be aggrieved and prejudiced by the order of the circuit court should it stand.

■■ The test as to whether an appellant has a right of review is whether his interest is direct, immediate and substantial. (*Flanagan v. Hulman* (1st Dist. 1970), 121 Ill. App. 2d 382, 257 N.E.2d 599.) Should the interest be merely speculative, theoretical, inconsequential or remote, he will not have a right of review. (*American Surety Co. v. Jones* (1943), 384 Ill. 222, 51 N.E.2d 122.) However, when an appellant is bound by the decree of the court below, even though the questions presented are moot, he is entitled to a determination of whether his claim is moot. *Harrison v. Kamp* (1946), 395 Ill. 11, 69 N.E.2d 261.

■■ In the instant case the circuit court ordered the Department appellant to transfer respondent from a Department facility for the mentally ill to a facility for the mentally retarded located in Kane, Lake or Cook County, pending the court's final hearing concerning the placement of respondent. We believe the Department has sufficient interest in the

matter before this court so as to warrant our treatment of the question of mootness.

Respondent asserts that the Department's compliance with the preliminary court order of January 5, 1976, together with the final court order of January 26, 1976, placing respondent in a Department facility to be designated by the Department, rendered moot the Department's attack of the preliminary court order. The Department contends that an actual controversy continues to exist in the question of the circuit court's authority to order the Department to act in a manner allegedly contrary to constitutional and statutory provisions. The Department maintains that should the issues be found moot, substantial public interest exists to warrant this court's treatment of the merits of the Department's argument.

Courts have determined an issue to be moot when no actual controversy, interests or rights of the parties are presented or involved or when the issue itself has ceased to exist. (*Hill v. Murphy* (1st Dist. 1973), 14 Ill. App. 3d 668, 303 N.E.2d 208.) And an appellate court will not review a case merely to resolve moot or academic questions, to establish precedent, or to render a judgment to guide potential future litigation. *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 378-379, 121 N.E.2d 486; see *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1, 11, 289 N.E.2d 431.

■■ The Department transferred respondent to a facility for the mentally retarded in compliance with the circuit court's preliminary hearing order of January 5, 1976. Moreover, the court's final order of January 26, 1976, found respondent to be mentally retarded and in need of hospitalization. The court then ordered the hospitalization of respondent in a Department facility for the mentally retarded to be designated by the Department. Any controversies between respondent and the Department have ceased to exist, and the Department's challenge of the court's order of January 5, 1976, transferring respondent from a hospital for the mentally ill to a hospital for the mentally retarded has been rendered academic or moot.

■■ Illinois does recognize the public interest exception to the mootness rule. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622, 104 N.E.2d 769.) The public interest exception is, however, applied very narrowly and must be very clear to prevent dismissal of appeals involving moot questions. *People ex rel. Cairo Turf Club, Inc. v. Taylor* (1954), 2 Ill. 2d 160, 164, 116 N.E.2d 880.

In *Labrenz* an eight-day-old infant's life was endangered by her parents' refusal because of their religious beliefs to consent to a necessary blood transfusion. The circuit court appointed a guardian whom the court authorized to consent to the blood transfusion. At the time the supreme

court considered the matter, the transfusion had been administered and the lower court had discharged the guardian, released the infant to her parents and ordered that the proceeding be dismissed. Although the case had become moot, the supreme court found the facts to fall "within that highly sensitive area in which governmental action comes into contact with the religious beliefs of individual citizens." (*Labrenz*, at 623.) It set forth three criteria which if established will bring a moot question within the public interest exception: (1) the public nature of the question, (2) the desirability of an authoritative determination for the future guidance of public officers, and (3) the likelihood of future recurrence of the question.

Since *Labrenz*, courts have applied the public interest exception very narrowly and have found the need for the very clear fulfillment of all three *Labrenz* conditions to bring an otherwise moot case within the public interest exception. (*People ex rel. Cairo Turf Club, Inc. v. Taylor* (1954), 2 Ill. 2d 160, 116 N.E.2d 880; *Hill v. Murphy* (1st Dist. 1973), 14 Ill. App. 3d 668, 303 N.E.2d 208; *People ex rel. Johnson v. Doglio* (3d Dist. 1976), 43 Ill. App. 3d 420, 356 N.E.2d 1360.) We find the public interest exception inapplicable in the instant case.

The urgent need for authoritative determination of life and death issues present in *Labrenz* does not manifest itself in the facts of the instant case. Respondent has been "finally found" to be severely mentally retarded and in need of hospitalization. Accordingly he has been placed in a Department hospital designated by the Department in compliance with section 9—6 of the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 9—6). In addition, the circumstances of this case appear to be unique and unlikely to occur with such frequency as to require a positive rule for the future guidance of public officials. Respondent had been hospitalized in Department facilities for the mentally retarded for 11 years prior to his residence at Meadows. Meadows was a nursing home for the mentally retarded. Respondent was clearly mentally retarded. Moreover, the record reveals no evidence of mental illness. The trial court was thus concerned about respondent's right to the best available treatment for the mentally retarded. In view of these circumstances the issues brought before this court are now moot and are not of sufficient public interest so as to warrant treatment on the merits.

For the reasons above set forth we are of the opinion that this appeal should be dismissed.

Appeal dismissed.

DOWNING, P. J., and STAMOS, J., concur.