(No. 91577.—

*In re* TEKELA *et al.*, Minors, Appellants (The People of the State of Illinois, Appellee, v. Wanda Cooper, Appellee).

*Opinion filed August 29, 2002.—Rehearing denied*
*December 2, 2002.*

283

HARRISON, C.J., dissenting.

Patrick T. Murphy, Charles P. Golbert and Kristin N. Wuerffel, of the Office of the Cook County Public Guardian, of Chicago, for appellants.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, Kenneth T. McCurry and Nancy Grauer Kisicki, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellee.

JUSTICE KILBRIDE delivered the opinion of the court:

This case arises from the termination of Wanda Cooper's parental rights over her three children: Ira J., born September 23, 1990; Kaylon J., born November 25, 1989; and Tekela J., born December 26, 1988. The circuit court of Cook County issued a summary judgment order terminating Wanda's parental rights. Wanda did not request a stay pending appeal. The appellate court reversed, finding that unresolved questions of fact made summary judgment inappropriate. 319 Ill. App. 3d 661. Unbeknownst to the appellate court, Tekela and Ira had already been adopted. The public guardian informed the appellate court of this development and filed a motion to vacate the appellate court's opinion as moot. The appellate court denied the public guardian's motion. We granted leave to appeal. 177 Ill. 2d 315.

We reverse and find that the adoption rendered Wanda's appeal moot as to her rights over Tekela and Ira and that the appellate court should have vacated its order as to Tekela and Ira on that basis.

## I. BACKGROUND

In March 1993, Ira and Tekela were placed in the foster care system following allegations of abuse. Since that approximate time, they have lived with the same foster parents.

On August 13, 1997, the State petitioned the circuit court to deem Wanda an unfit parent, terminate her parental rights, and appoint a guardian (the Department of Children and Family Services) with the power to consent to adoption of her three children. In support of its petition, the State alleged in part that Wanda was unable to discharge her parental responsibilities due to a mental illness.

On December 7, 1998, the State filed a motion for summary judgment. The motion incorporated earlier

judicial findings, an adjudication of wardship, a psychological evaluation, and a parental assessment. Wanda filed a written objection and attached supporting affidavits from her husband, David, and a psychiatrist.

On April 30, 1999, on summary judgment, the circuit court issued a multipart order that, among other things, terminated Wanda's parental rights and appointed a guardian with the power to consent to adoption. A stay was never requested or issued. The circuit court also terminated the parental rights of the children's father. He did not appeal that order.

On May 7, 1999, Wanda filed a timely notice of appeal, arguing primarily that summary judgment was inappropriate because disputed issues of material fact existed.

On February 20, 2001, the appellate court reversed. 319 Ill. App. 3d 661. The appellate court's opinion thoroughly details the factual background and evidence adduced in the parental fitness and termination proceedings. The substantive findings on those issues have not been appealed to this court and therefore that information need not be repeated here. See 319 Ill. App. 3d at 663-69.

Initially, the appellate court noted that summary judgment and termination of parental rights are both drastic measures and must be closely scrutinized. The court observed that few cases exist upholding a summary determination of parental rights. Of those cases, none involved a termination based upon mental illness. 319 Ill. App. 3d at 671. The court noted that:

"Summary judgment may be more or less useful depending on the subject matter of the dispute. [Citation.] We do not wish to suggest that there are no cases in which summary findings of parental unfitness on grounds of mental illness or impairment would be appropriate. However, we believe that the question of whether a parent has a mental illness or impairment that prevents her from discharging

her parental duties, unlike the question of whether a parent has a conviction for a particular crime, is a nuanced, fact-intensive question that does not readily lend itself to summary determination." 319 Ill. App. 3d at 672. The court noted the existence of unresolved questions of material fact and found that the circuit court erred in granting summary judgment.

On March 1, 2001, the public guardian filed a motion to vacate the appellate court's decision as moot or, in the alternative, for further directions. For the first time, the public guardian informed the appellate court that on September 27, 1999, Tekela and Ira had been adopted by their foster parents.

On March 16, 2001, the appellate court ordered the parties to file, within 14 days, a "detailed legal memorandum addressing all jurisdictional issues arising from the adoption proceeding going forward" while the appeal was pending. The appellate court's order further requested legal authority for the guardian's reference to the "seem[ing] *** mootness" of Wanda's appeal. Finally, the court requested the State to explain its position and Wanda to advise the court of the relief she was seeking in light of the adoption proceeding.

On April 25, 2001, the appellate court heard oral arguments on the public guardian's motion. At oral argument, the court expressed doubts as to the validity of the adoptions in light of the court's decision vacating the termination order. On April 30, 2001, the appellate court issued a written order rejecting the public guardian's requests. The order simply denied the public guardian's motion and did not address the implications of the recently discovered adoption. The appellate court issued its mandate on May 14, 2001.

The public guardian filed a petition for leave to appeal on behalf of Tekela and Ira. On May 29, 2001, we directed the appellate court to recall its mandate. We subsequently allowed the public guardian's petition for

leave to appeal. We also granted the State's motion to appear as an appellant.

On appeal before this court, neither the State nor the public guardian challenge the substance of the appellate court's February 20, 2001, ruling that summary judgment was inappropriate in this case. Instead, the public guardian and State simply challenge the appellate court's order denying the motion to vacate the February 20, 2001, opinion as moot.

## II. ANALYSIS

The public guardian and State argue that Wanda's failure to request a stay pursuant to Supreme Court Rule 305 (155 Ill. 2d R. 305) allowed the adoption to proceed legally. This failure, the State and public guardian argue, rendered Wanda's appeal of the termination order moot.

Initially, Wanda counters that a stay was unnecessary because she filed a notice of appeal. Wanda states in her brief that "stays are discretionary, whereas the right to an appeal is absolute" and therefore "an appellant need not secure a stay of trial proceedings to pursue his [or her] right to appeal." Wanda also implies that stay requests are a waste of time in this context because they "are seldom granted."

We disagree with Wanda's contention that a notice of appeal acts as a substitute for a stay. Wanda correctly notes that Illinois law provides her with a right to appellate review. Ill. Const. 1970, art. VI, § 6; *Jack Spring, Inc. v. Little*, 50 Ill. 2d 351, 355 (1972). Nonetheless, Wanda fails to cite any direct authority indicating that a notice of appeal necessarily operates to stay a judgment. In fact, Illinois courts have reached the opposite conclusion. In *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514 (2001), this court noted the distinction between a notice of appeal and a stay pending appeal. We stated in pertinent part as follows:

"A notice of appeal is not an application of stay within the

meaning of this court's rules. Rather, our rules clearly distinguish between a notice of appeal and motion to stay. Compare 155 Ill. 2d R. 303(b) with 155 Ill. 2d R. 305. Further, the mere nature and effect of the notice of appeal and motion to stay illustrate that they are not synonymous. A notice of appeal is a procedural device filed with the trial court, that when timely filed vests jurisdiction in the appellate court in order to permit review of the judgment such that it may be affirmed, reversed, or modified. [Citation.] A motion to stay impacts the enforcement and effect of the judgment, but does not challenge the sufficiency of that judgment." *Steinbrecher*, 197 Ill. 2d at 527 n.4.

While the applicable stay provision in *Steinbrecher* was Supreme Court Rule 305(j) (155 Ill. 2d R. 305(j)), our holding was broad and unequivocal: absent a contrary statutory provision or supreme court rule, an appeal by itself does not operate as a stay.[1] We see no reason to depart from *Steinbrecher* here. See also *Graff v. Graff*, 71 Ill. App. 3d 496, 503 (1979); accord *Lawrence v. St. Louis-San Francisco Ry. Co.*, 278 U.S. 228, 232, 73 L. Ed. 282, 286, 49 S. Ct. 106, 107 (1929) (finding that an appeal to the United States Supreme Court does not act as a stay); 5 Am. Jur. 2d *Appellate Review* § 437, at 179 (1995).

Further, without restricting the circuit court's discretion in ruling on a stay in a termination proceeding, we disagree with Wanda's contention that a stay request would have been a waste of time. To the contrary, persuasive arguments existed to support a stay request.

---

[1]Some states have implemented specific procedures for the type of scenario that exists in the instant case. For example, Rule 9.146 of Florida's Rules of Appellate Procedure provides that: "[t]he taking of an appeal shall not operate as a stay in any case unless pursuant to an order of the court, except that a termination of parental rights order with placement of the child with a licensed child-placing agency or the Department of Children and Family Services for subsequent adoption shall be suspended while the appeal is pending, but the child shall continue in custody under the order until the appeal is decided." Fla. R. App. P. 9.146.

See *Stacke v. Bates*, 138 Ill. 2d 295, 302 (1990) (discussing factors a court should consider in ruling on a stay request). An order of termination of parental rights severs a basic fundamental liberty interest and therefore inflicts severe harm. See *In re Paul*, 101 Ill. 2d 345, 354-55 (1984). Further, as illustrated by the nature of the instant controversy and the public policy considerations favoring finality and stability of adoptions (*In re Adoption of Hoffman*, 61 Ill. 2d 569, 578 (1975)), a stay may be necessary to preserve the status quo pending appeal. Failure to grant a stay in a termination of parental rights case could also preclude meaningful appellate review and deny a parent's rights under article VI, section 6, of our constitution. See London, *Stays Pending Appeal*, 3 App. L. Rev. 1, 19 (1990). This conclusion is obvious when one notes the relatively short period of time that may elapse between the entry of a termination of parental rights order and enforcement of that order (*i.e.*, an adoption proceeding).

Nonetheless, in this case, Wanda failed to *request* a stay from either the circuit court or the appellate court. While Wanda enjoyed a right to appeal the termination order, it remained incumbent upon her to protect that right and to take necessary steps to preserve the fruits of her appeal. See *People v. Crane*, 195 Ill. 2d 42, 58 (2001) (stating that a defendant is not completely absolved from all responsibility of asserting his or her fundamental rights). The United States Supreme Court has similarly acknowledged the importance of a party protecting its own interests. For example, that Court has repeatedly held that, " '[n]o procedural principle is more familiar *** than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " *Coleman v. Thompson*, 501 U.S. 722, 751, 115 L. Ed. 2d 640, 670, 111 S. Ct.

2546, 2565 (1991), quoting *Yakus v. United States*, 321 U.S. 414, 444, 88 L. Ed. 834, 859, 64 S. Ct. 660, 677 (1944).

Wanda failed to obtain a stay to prevent enforcement of the termination order and therefore we necessarily conclude that the circuit court had authority to move forward with the adoption proceeding. Section 2—29 of the Juvenile Court Act of 1987 (705 ILCS 405/2—29 (West 1998)) specifically authorizes the appointment of a guardian to consent to adoption once a termination order is issued. 705 ILCS 405/2—29 (West 1998). "Such consent is sufficient to authorize the court in the adoption proceedings to enter a proper order or judgment of adoption without further notice to, or consent by, the parents of the minor." 705 ILCS 405/2—29 (West 1998). Section 5 of the Adoption Act (750 ILCS 50/5 (West 1998)) states that an adoption proceeding should normally be initiated by the filing of a petition within 30 days of the date the child becomes available. Neither the Juvenile Court Act nor the Adoption Act require that this process be suspended while a termination order is pending on appeal.

Wanda next cites *In re Petition of Doe*, 159 Ill. 2d 347, 350 (1994), where this court invalidated an adoption because the father's parental rights were never validly terminated. Wanda argues that, because of the appellate court's February 20, 2001, opinion, her parental rights were never validly terminated. Wanda therefore argues that the appellate court correctly denied the public guardian's motion to vacate and that Tekela and Ira's adoptions must be invalidated. We disagree as to both arguments.

First, Wanda mistakenly assumes that the termination order and the adoption order are one and the same. That is simply not the case. The circuit court terminated Wanda's parental rights pursuant to the Juvenile Court

Act (705 ILCS 405/1—1 *et seq.* (West 1998)). The adoption order was entered pursuant to the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 1998)). An attack on the adoptions' validity was never before the appellate court and it is not properly before this court. In fact, the record contains only two documents from the adoption proceeding: a copy of the adoption order and a copy of the order closing the adoption. These two documents were appended to the public guardian's motion to vacate. We also note that the notice of appeal in this case is based solely on the issue of termination of parental rights and does not challenge the adoption proceeding or even the order granting the guardian the power to consent to adoption. In fact, we have no indication that the adoption order has ever been attacked either directly or collaterally. In contrast to the instant case, the petitioner in *Doe* attacked both the termination proceeding *and* the adoption proceeding. See *In re Petition of Doe*, 254 Ill. App. 3d 405, 410 (1993). We will not invalidate an unchallenged adoption.

Second, we disagree with Wanda's assertion that no valid termination of parental rights occurred. Again, Wanda bases this contention on the fact that the appellate court reversed the circuit court's termination order. In other words, Wanda argues that the circuit court's termination order, although jurisdictionally valid when entered, was subsequently rendered invalid by the appellate court's opinion. The question is, however, not whether Wanda's parental rights were validly terminated in light of the appellate court's February 20, 2001, judgment. Clearly, if the termination order is properly reversed, no valid termination exists. The question is whether the appellate court's February 20, 2001, judgment was properly entered or, more precisely, whether it should have been vacated as moot. If the termination issue became moot before it was addressed by the appel-

late court, the remand order should be vacated and, correspondingly, the termination order should necessarily be reinstated and considered valid.

For the reasons that follow, we conclude that the adoptions and the passage of the statutory period to challenge them rendered the termination issue moot before the appellate court entered its judgment. Therefore the appellate court's judgment reversing the termination order should have been vacated. We must again note that, as a practical matter, the circuit court's termination order was valid when issued and that Wanda failed to request a stay from either the circuit court or a reviewing court to preserve the status quo.

The failure to obtain a stay pending appeal, by itself, does not necessarily render an issue moot. *Smith v. Goldstick*, 110 Ill. App. 3d 431, 434 (1982). Absent a statute or supreme court rule to the contrary, where no stay is sought, any rights a party gains pursuant to a judgment may ordinarily be subject to redetermination upon reversal by the reviewing court. For example, in *First National Bank of Jonesboro v. Road District No. 8*, 389 Ill. 156, 161-62 (1945), we held that:

> "[a] party to a suit is presumed to know of all the errors in the record, and such party cannot acquire any rights or interests based on such erroneous decree that will not be abrogated by a subsequent reversal thereof. If such party has received benefits from the erroneous decree or judgment, he must, after reversal, make restitution, and, if he has sold property erroneously adjudged to belong to him, he must account to the true owner for the value. *** A party to a decree cannot acquire any rights thereunder while the same is subject to review which he can assert after the decree is reversed, since the effect of the reversal is to abrogate the decree and leave the cause as it stood prior to the entry of the decree."

Nonetheless, when an intervening event occurs making it impossible for a reviewing court to grant relief to any party, the case is rendered moot because a ruling on the

issue cannot have any practical effect on the controversy. See *In re Adoption of Walgreen*, 186 Ill. 2d 362, 364 (1999); *Richardson v. Rock Island County Officers Electoral Board*, 179 Ill. 2d 252, 256 (1997); *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992). "The fact that a case is pending on appeal when the events which render an issue moot does not alter this conclusion." *Dixon*, 151 Ill. 2d at 116, citing *Bluthardt v. Breslin*, 74 Ill. 2d 246, 250 (1979).

In the instant controversy, we cannot issue a ruling having any effect on the parties' rights. Section 20b of the Adoption Act (750 ILCS 50/20b (West 1998)) states that "[a] petition for relief from a final order or judgment entered in a proceeding under this Act, after 30 days from the entry thereof under the provisions of Sec. 2—1401 of the Code of Civil Procedure [(735 ILCS 5/2—1401 (West 1998))] or otherwise, *must be filed not later than one year after the entry of the order or judgment.*" (Emphasis added.) As with any statutory provision, section 20b is presumptively constitutional (*Tully v. Edgar*, 171 Ill. 2d 297, 304 (1996)), and Wanda does not challenge its validity. In this case, well over a year has passed since the adoption order was entered and therefore it cannot be challenged now. The adoptions in this case and the lapse of the period to challenge them constitute intervening events that preclude this court from providing Wanda with relief in this case.

We also note that this is not a case involving a building that must be rebuilt or dissipated funds that must be replenished. Public policy considerations require that adoptions be accorded a certain degree of stability and finality. *In re Adoption of Hoffman*, 61 Ill. 2d at 578. Other courts have been reluctant to undo complicated situations arising through a party's failure to obtain a stay, referring to such an endeavor as "unscrambling an egg." *In re CGI Industries, Inc.*, 27 F.3d 296, 299 (7th

Cir. 1994). We acknowledge the importance of this case and thus will not apply such a colorful analogy. Nonetheless, we are reluctant to undo an adoption finalized well over a year ago, particularly in a case where, as here, the adoption was not procured through fraud, deception, or other illegal means.

While our constitution guarantees a right to meaningful appellate review, it does not necessarily guarantee relief on the merits or relief that will be acceptable to the appellant. Relief is typically granted only when a final order is at issue and where jurisdiction is properly vested in the reviewing court. See *Niccum v. Botti, Marinaccio, Desalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998). Review is also subject to the related doctrines of standing, ripeness, and as in this case, mootness. See *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 279-80 (1989). As our appellate court observed in *Trompeter Construction Co. v. First Federal Savings & Loan Ass'n of Ottawa*, 62 Ill. App. 3d 173 (1978), "When an appellant is bound by the decree of the court below, even though the questions presented are moot, he is entitled to a determination of whether his claim is moot." *Trompeter*, 62 Ill. App. 3d at 176, quoting *In re Johnson*, 53 Ill. App. 3d 921, 923 (1977). Wanda's right to appellate review of the termination order is necessarily limited by its mootness.

Finally, we wish to express our frustration with the conduct of the parties in this case. We are dealing with critical issues regarding children and families. This troubling, squalid situation could have been avoided had Wanda requested a stay of proceedings pending appeal pursuant to Supreme Court Rule 305 (155 Ill. 2d R. 305). Additionally, either party could have requested that the case be placed on an accelerated docket pursuant to Supreme Court Rule 311 (155 Ill. 2d R. 311) and requested an expedited briefing schedule pursuant to Supreme Court Rule 343(c) (155 Ill. 2d R. 343(c)). The

record also indicates that Wanda filed at least two unopposed motions for extensions of time to file briefs in the appellate court. The State and public guardian filed at least eight unopposed motions for extensions of time to file briefs and then, in their respective briefs, partially justified the adoption proceeding on expediency grounds. Most importantly, notwithstanding Wanda's failure to obtain a stay, the State and public guardian legally but unwisely proceeded with an adoption while Wanda's appeal was pending. This maneuver seriously jeopardized the children's need for stability, to say the least. Then, the State and public guardian failed to inform the appellate court of the adoption until after the court had entered its judgment. Children, adoptive families, natural parents, and this court demand a substantially higher level of competency.

Additionally, we note the compelling need for structured reform in this area. The supplemental record contains a letter from the presiding judge of the Cook County circuit court's child protection division to one of the justices in the First District of our appellate court. The letter illuminates the problems that exist in this case and countless others. It reads in pertinent part as follows:

"Under the Juvenile Court Act, when parental rights are terminated, the child becomes eligible for adoption. The adopting parents then petition for adoption in the County Division of the Circuit Court. The child's adoption is typically completed within three months to one year after parental rights have been terminated.

Little changes when a parent appeals an order terminating parental rights. A parent who appeals a termination of parental rights seldom requests a stay either in the Child Protection Division or in the Appellate Court. Accordingly, the child's case continues to progress as if no appeal had been taken. The adopting parents petition for adoption and a judge in the County Division finalizes the adoption. Often the County Division judge is unaware that a parent has appealed the order terminating parental rights. ***

If the appeal of the termination of parental rights is successful and the adoption has been finalized, there may be a need to undo the adoption. Undoing an adoption can have traumatic effects on a child. Moreover, there are legal difficulties in undoing an adoption. For instance, the Adoption Act limits to one year the time period in which to request relief under section 2—1401 of the Illinois Code of Civil Procedure. It is conceivable that that year will have expired prior to the Appellate Court's decision.

Even if there were no legal difficulties in vacating the adoption, the potential traumatic effects that that action has on a child remain. Granting a stay does not adequately cure the problem. While it prevents the trauma caused by vacating an adoption, it aggravates the emotional problems that a child may experience because of a lack of permanency. The need for permanence is one of the purposes underlying the Juvenile Court Act and Federal Child Welfare Legislation.

From the child's perspective the best solution is an expeditious resolution of the appeal. An expeditious resolution minimizes delays for any child who is ready to be adopted and increases the likelihood of an adoption for a child for whom no adoptive placement has been located."

We agree that expedience is a critical component of the adoption process. Expediency, however, does not necessarily override competing requirements of finality and stability. We therefore conclude that, from the child's perspective, the best solution is an expeditious resolution of the appeal *and* a stay pending that resolution. Thus, significant, structured reforms are obviously necessary to improve expediency while promoting finality and stability.

## III. CONCLUSION

We hold that Wanda's filing of a notice of appeal did not serve as a stay of the termination order. Wanda's failure to stay the termination order allowed the adoption of Tekela and Ira to proceed legally. The 12-month time limitation to challenge their adoptions has passed

and the adoptions were never challenged. Therefore, the termination issue is moot as to Wanda's parental rights over Tekela and Ira.

We recognize that, when the appellate court entered its judgment, it had no knowledge of the adoption and the fact that the controversy had been rendered moot. Nonetheless, once the appellate court learned of the adoption, it should have vacated its judgment and, in turn, reinstated the circuit court's termination order.

We further hold that Wanda places the cart before the horse when she argues that there can be no proper adoption because there was no preceding, valid termination of parental rights. We conclude that there was no proper reversal of the termination order because there was a preceding, valid adoption that rendered appellate review of the termination order moot.

We therefore reverse the appellate court's judgment and vacate its remand order as to Tekela and Ira. The circuit court's order terminating Wanda's parental rights over Tekela and Ira is reinstated. Wanda's parental rights over Kaylon are not before us and therefore we do not disturb the appellate court's judgment and remand order as it pertains to Kaylon.

> *Appellate court reversed in part*
> *and vacated in part;*
> *circuit court order reinstated in part.*

CHIEF JUSTICE HARRISON, dissenting:

As a mother, Wanda Cooper has a fundamental right in the care, custody and control of her children. *In re M.H.*, 196 Ill. 2d 356, 362 (2001). As a civil litigant, Wanda Cooper has the right to appeal any adverse final judgments rendered against her by the courts of Illinois. See Ill. Const. 1970, art. VI, § 6; 155 Ill. 2d R. 301. Today's decision by the majority wrongly deprives Ms. Cooper of each of these rights. I must therefore respectfully dissent.

The proceedings which gave rise to this matter commenced when the State filed a petition in the circuit court of Cook County under section 2—29(2) of the Juvenile Court Act of 1987 (705 ILCS 405/2—29(2) (West 1998)) asking that Ms. Cooper be declared an unfit parent, that her parental rights over her three children be terminated, and that the Department of Children and Family Services be appointed guardian with the power to consent to the children's adoption.

Because of a parent's fundamental right in the care, custody and control of her children, the State must bear a heavy burden if it wishes to sever parental rights without the parent's consent. *In re M.H.*, 196 Ill. 2d at 365. Specifically, the State must prove by clear and convincing evidence that the parent is an unfit person as defined by section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 1998)). *In re C.W.*, 199 Ill. 2d 198, 210 (2002); see *In re Latifah P.*, 315 Ill. App. 3d 1122, 1128 (2000); 705 ILCS 405/2—29(2) (West 1998).

Adherence to this requirement is mandatory. The language of the Juvenile Court Act is clear and unambiguous (*In re M.M.*, 156 Ill. 2d 53, 69 (1993)), and courts applying the statute must proceed within the law's strictures (*In re M.M.*, 156 Ill. 2d at 66). Accordingly, a parent's rights may not be terminated without her consent absent the requisite finding that the parent is unfit. See *In re Gibson*, 24 Ill. App. 3d 981, 985 (1975). Indeed, terminating a parent's rights involuntarily absent a prior showing of unfitness would be unconstitutional. See *In re Petition of Kirchner*, 164 Ill. 2d 468, 501 (1995).

The appellate court held that the requisite prior showing of unfitness has not yet been made in this case. 319 Ill. App. 3d at 673. The correctness of its judgment has not been challenged. That being so, Ms. Cooper's parental rights remain in effect.

Although the circuit court ruled otherwise when it granted the State's petition to terminate parental rights and appoint a guardian with power to consent to an adoption, that is of no consequence in light of the subsequent reversal. Under Illinois law, a reversal abrogates the circuit court's decree and leaves the cause as it stood prior to entry of judgment, restoring the parties to their original positions. See *In re Marriage of Lehr*, 317 Ill. App. 3d 853, 859 (2000). Once the appellate court reversed the circuit court's judgment granting the State's petition, the circuit court's judgment therefore ceased to have any effect. No further action by Ms. Cooper was required. By operation of law, the finding that she was unfit was rendered a nullity. She regained her parental rights as if they had never been lost.

A condition precedent to an adoption is either consent of the parent or a finding by the court that consent is not required for the reason of unfitness. See *In re Petition of Smith*, 4 Ill. App. 3d 261, 265 (1972). Because Ms. Cooper has not been found unfit and because her parental rights remain in effect, Ira, Kaylon and Tekela are not subject to adoption by third parties under the Adoption Act. See 705 ILCS 405/2—29(2) (West 1998); *In re Petition of Kirchner*, 164 Ill. 2d at 550 (McMorrow, J., dissenting) ("[t]ermination of parental rights is the necessary prerequisite to granting a valid adoption").

That the State opted to proceed with the adoption of Ira and Tekela while Ms. Cooper's appeal of the circuit court's judgment remained pending does not alter this conclusion. The circuit court's judgment was a final judgment in a civil case and was therefore appealable by Ms. Cooper as of right. Ill. Const. 1970, art. VI, § 6; 155 Ill. 2d R. 301. The only step Ms. Cooper was required to perform in order to perfect that appeal was to file a notice of appeal, which she did. No statute, rule of court or principle of law obligated her to also move for a stay.

Under the procedures established by our court, seeking a stay pending appellate review of the trial court's judgment is optional. It is not normally necessary in order to prevent the appeal from being rendered moot. See *O'Brien v. Cacciatore*, 227 Ill. App. 3d 836, 842 (1992); *Schaumburg State Bank v. Seyffert*, 71 Ill. App. 3d 630, 635-36 (1979). As a result, a litigant's failure to request a stay neither precludes him from appealing nor prohibits him from receiving the relief he should have obtained in the lower court. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 516-17 (1988).

A narrow and specific exception to this rule exists in cases involving the sale of property to purchasers who were not parties to the challenged judgment. 155 Ill. 2d R. 305(j); *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 526-28 (2001). That exception, however, has no relevance to the matter before us here. Ira and Tekela are not property up for sale. They are children, and Ms. Cooper is still their mother. The appellate court was therefore correct in denying the State's motion to vacate the court's judgment as moot.

In reaching this conclusion, I am as mindful as my colleagues of the need for finality and stability in the adoption process. We have long since established, however, that finality and stability cannot excuse the failure to effectuate an adoption that complies with the law. If parental rights have not been validly terminated, an adoption based on that improper termination cannot stand, even if the subject children are already in the custody and care of the adoptive parents. See *In re Petition of Doe*, 159 Ill. 2d 347 (1994); *In re Petition of Kirchner*, 164 Ill. 2d at 501 (court will not legitimate family relationship with adoptive parents "which has come about in derogation of the procedural safeguards afforded fit [parents] under the Adoption Act"—adoptive parents therefore ordered to surrender child to his natural father

despite passage of years child spent in adoptive parents' care).

In departing from these principles, the majority has embarked on a dangerous course. If obtaining an adoption decree is adequate to moot any challenge to the judgment terminating parental rights, termination and adoption proceedings will degenerate into what will, quite literally, be a race to judgment. Knowing that under today's decision an adoption, once completed, will not be undone, the State will inevitably be tempted to delay appeal of the termination judgment as long as possible, while pursuing the adoption proceedings as quickly as possible. With proper case management and careful timing, the adoptions, which are technically consensual once the State is given authority by the court to consent to the adoption, will always be concluded before appeals of termination judgments, which will be contested. As a result, the propriety of termination judgments will, for all practical purposes, no longer be reviewable. No matter how flawed a termination judgment might be, no matter how far it might depart from statutory requirements or basic constitutional guarantees, once the adoption decree is entered, the natural parents will be left with no recourse.

My colleagues will no doubt dismiss this concern with the observation that aggrieved natural parents can stop the race simply by seeking a stay of the termination judgment while it is being appealed. If entry of an adoption decree cannot be undone, however, it will not be sufficient merely to request a stay. Natural parents will be able to preserve their parental rights and their right to appeal the termination of those rights only if the request for a stay is actually allowed. The problem is that under Supreme Court Rule 305(b) (155 Ill. 2d R. 305(b)), which governs such cases, stays are not automatic. They are a matter for the court's discretion. Accordingly, the

majority's analysis ultimately places a parent's fundamental rights wholly at the mercy of a judge's subjective view of what is fair. While we may hope that judges will exercise that discretion wisely, experience teaches that they will not always do so. There will be occasions where prejudice or ignorance prevail. No matter how rare such instances may be, I do not believe we can sanction any system which allows even the possibility that fundamental constitutional rights can be defeated by a judge's personal bias or whim.

Finally, I must take issue with the majority's attempt to place blame for what happened here on Ms. Cooper. As noted earlier in this dissent, Cooper did all that the law required her to do. When the circuit court found her unfit and terminated her parental rights, she promptly appealed. When that appeal succeeded, she regained her parental rights by operation of law. No statute or rule of court obligated her to take further action pending remand to the circuit court.

I note, moreover, that once the circuit court entered its order terminating Ms. Cooper's parental rights and giving the State power to consent to the children's adoption, she was not entitled to any further notice before the adoption of her children could go forward. 705 ILCS 405/2—29(2) (West 1998); 750 ILCS 50/7A (West 1998). The State was free to proceed with the adoption surreptitiously and apparently did so. Not even the appellate court was aware of it until it was completed. Accordingly, this is not a situation in which a mother sat by and willingly allowed the State to take action she knew to be contrary to her interests. Ms. Cooper did not know what was going on, as far as this record shows, and that is precisely what the State intended.

Under these circumstances, I believe that if anyone is blameworthy here, it is the State. The State had the knowledge and power to prevent the disruption to the

children's lives. Ms. Cooper did not. The State knew full well of the pendency of Ms. Cooper's appeal; it knew full well that the finding of unfitness and the termination of Cooper's parental rights were subject to reversal; and it knew full well that without the requisite finding of unfitness and termination order, no valid adoption could stand. It nevertheless decided to proceed with the adoption before the outcome of the appeal was known.

In embarking on that course of conduct, the State took the same gamble any litigant takes when it chooses to receive benefits from a judgment while the judgment is under appeal, namely, that it will be divested of whatever rights it acquired under the judgment and be required to relinquish those benefits if the judgment is reversed. See *Schaumburg State Bank*, 71 Ill. App. 3d at 636. Unfortunately, the gamble in this case involved children. Unfortunately for the stability of the children's lives, the State's gamble lost.

Contrary to the majority's view, we are not left with a situation that cannot be undone. We know where the children are, and we know what the law requires. Until there is a valid judgment finding Ms. Cooper unfit and terminating her parental rights, there can be no adoption without her consent. Under the statutes of Illinois and the federal and state constitutions, no other conclusion is possible. We cannot allow rights as precious and fundamental as those at stake here to be defeated by State-orchestrated deceit.

For the foregoing reasons, I respectfully dissent.