(No. 92646.—

*In re* INDIA B. *et al.*, Minors, Appellees (The People of the State of Illinois, Appellee, v. Denise S., Appellant).

*Opinion filed December 5, 2002.*

Rita Fry, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, Nancy Grauer Kisicki and Jennifer Streeter, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Cook County Public Guardian, of

Chicago (Charles P. Golbert and Allison D. Ortlieb, of counsel), for appellee minors.

JUSTICE THOMAS delivered the opinion of the court:

The circuit court of Cook County entered a default judgment on July 7, 1999, terminating the parental rights of respondent, Denise S., to her four minor children, India B., Dell B., and twins Felicia J. and Aiesha J. Respondent did not request a stay of the enforcement of the July 7, 1999, order terminating her parental rights. The circuit court subsequently denied respondent's motion to vacate the default judgment on September 16, 1999. Thereafter, final adoption orders were entered for all four minors. On appeal, the appellate court affirmed the judgment of the circuit court terminating respondent's parental rights. No. 1—99—3433 (unpublished order under Supreme Court Rule 23). We granted respondent's petition for leave to appeal (177 Ill. 2d R. 315), and we now dismiss her appeal as moot in light of our recent decision in *In re Tekela*, 202 Ill. 2d 282 (2002), which held that a notice of appeal does not stay enforcement of a parental rights termination order and an adoption order based on the termination order becomes unchallengeable after the passage of one year.

## BACKGROUND

The record reveals that on November 17, 1992, the Department of Children and Family Services (DCFS) took protective custody of respondent's four children and filed petitions for adjudication of wardship, alleging that the children were neglected and were exposed to an injurious environment pursuant to section 2—3(1) of the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1989, ch. 37, par. 802—3(1)). Following an adjudicatory hearing, the trial court found that twins Aiesha and Felicia were neglected and had been exposed to a controlled substance at the time of

their births through respondent's drug usage (Ill. Rev. Stat. 1989, ch. 37, par. 802—3(1)(c)). The court further found that India and Dell had been neglected and exposed to an injurious environment by respondent (Ill. Rev. Stat. 1989, ch. 37, par. 802—3(1)(b)). On June 3, 1993, the children were adjudged wards of the court, and DCFS was appointed guardian with the right to place the children. Over the next five years, respondent's progress toward reunification with her children was largely unsatisfactory.

On August 6, 1998, the State filed petitions seeking to terminate respondent's parental rights and to appoint a guardian with the right to consent to the adoption of the children. The petitions alleged, *inter alia*, that respondent had abandoned the children; had failed to maintain a reasonable degree of interest, concern or responsibility for them; and had failed to make reasonable efforts or progress to correct the conditions which caused their removal.

The State's termination petitions were set for a hearing to be held on May 20, 1999. To secure respondent's presence and testimony at the scheduled hearing, both the State and the public guardian served respondent with a notice to appear pursuant to Supreme Court Rule 237(b) (166 Ill. 2d R. 237(b)). The notices warned that respondent would be subject to sanctions under Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)) if she failed to appear for the hearing.

On May 20, 1999, the hearing was continued by agreement of the parties until July 7, 1999, at 10:30 a.m. The court specifically continued to July 7, 1999, all subpoenas and all notices to appear for the hearing. Respondent and her attorney were present in court on May 20, 1999, and neither of them objected to the continuation of the notices to appear.

On July 7, 1999, respondent failed to appear for the

termination hearing. Respondent's public defender told the trial court that he had not had any contact with respondent and had not received any information about her whereabouts. The State and the guardian *ad litem* informed the court that they were ready for trial, but respondent's counsel stated that he was not ready for trial. The trial court passed the case to allow the public defender to contact respondent. When the case was recalled, respondent was still not present. The public defender stated that he could not reach respondent and that he had not received any messages from her.

The trial court then granted the State's and the guardian *ad litem*'s requests for sanctions pursuant to Rule 219(c) for respondent's failure to appear. In rejecting respondent's counsel's request for imposition of one of the lesser sanctions available under Rule 219(c), the court stated the following:

"The notice was not only prepared, but so that she may be called as a witness by the State and the GAL in their cases, the Public Defender has had no contact from [respondent]. She's left no messages regarding any emergencies, regarding any explanations why she is not here today; the matter was set for trial at 10:30. The notice to appear was for 9:00. The record will reflect that the case was originally called at approximately 10:30; passed. It was recalled at 11:30. It is now 12:10 in the afternoon, [respondent] is still not in court, nor has she left any messages for her attorney requesting a continuance on her behalf or explaining her absence today.

I therefore find that the matter be scheduled for trial, [respondent] having full notice that today was the day for trial, and not being here in court in response to the motion and the notice. The State's and the GAL's requests for sanctions under 219 will be granted. All sanctions requested will be granted. The mother will be barred from presenting any further pleadings. She will be barred from presenting her defense. She will be barred from testifying, and she will be placed in default."

The trial court then required the State and the guard-

ian *ad litem* to present stipulated evidence of respondent's unfitness. Respondent's counsel made no objection to the evidence stipulated to by the State and the guardian *ad litem*. The evidence presented showed that respondent was admitted to a psychiatric hospital in November 1992 because she was suicidal and was suffering from major depression. She had had two previous admissions before this time. After leaving the hospital on December 2, 1992, respondent was again admitted to the hospital on December 15, 1992. At that time, she exhibited major depression, poly-substance abuse, and "suicidal and homicidal ideations."

Yvette Harris, a DCFS caseworker, established a service plan for the respondent on November 30, 1992. Harris's social investigation revealed that the respondent had been using cocaine since 1987. The service plan required respondent to complete a drug and alcohol evaluation, sign releases of information, cooperate with recommendations, submit to random urine drops for drug testing, participate in psychological counseling to learn alternative ways of dealing with stress, and participate in weekly visitation.

Respondent was released from the psychiatric hospital on December 31, 1992. On March 30, 1993, a psychological evaluation was performed on respondent, concluding that she was not emotionally or intellectually capable of caring for her children. The evaluation further revealed that respondent had "impulsivity and anger toward others" and "had a borderline psychotic functioning."

After the trial court adjudged respondent's children wards of the court and found that she was unable to parent her children, respondent began a counseling program at Mercy Hospital in July 1993. Her attendance, however, was inconsistent over the next year and a half.

On February 6, 1994, the trial court found that

respondent had not made reasonable progress toward the return of her children. Although she was involved in some services, she had not obtained stable housing, had not completed drug treatment, and had not completed counseling to address her mental health issues.

A DCFS case report from September 1995 revealed that the respondent was not involved in services and was not visiting her children. The DCFS caseworker attempted to contact respondent, but respondent's phone had been disconnected. From August 1995 until November 1996, respondent was allowed to have weekly visits with her children, but during that time, she visited them only once every three or four months.

In May 1996, respondent received an unsatisfactory rating from her caseworker for failing to visit her children, failing to obtain stable housing, and failing to participate in services. At this time, the trial court admonished respondent that if she did not regularly visit her children and complete reunification services, the permanency goal of returning the children to her would be changed.

Respondent failed to appear for a July 1996 urine test, and her urine tests in August and October of 1996 yielded positive results for the presence of controlled substances. In December 1996, respondent admitted to her DCFS caseworker that she had a problem with drugs. As of January 1, 1997, respondent had not enrolled in a drug-treatment plan despite three referrals from her caseworker.

The April 1997 service plan rated defendant's progress as unsatisfactory because she failed to visit her children or engage in services. On May 6, 1997, the court changed the permanency goal to long-term foster care.

In August 1997, respondent completed a bonding assessment with her children. The examiner at the bonding assessment observed that respondent paid little at-

tention to the behavior of the children and made few efforts to redirect them. The examiner concluded that a close bond had not formed between respondent and the children. Case reviews in November 1997, May 1998, and November 1998 continued to rate respondent's progress as unsatisfactory because respondent was not visiting the children regularly and had not completed counseling or drug treatment.

After hearing the stipulated evidence, the trial court found that, based on clear and convincing evidence, respondent was unfit because she failed to maintain a reasonable degree of interest, concern, or responsibility as to her children and failed to make reasonable efforts and progress towards the return of the children. The case then proceeded to the best interest portion of the hearing.

The State and guardian *ad litem* stipulated to the testimony of two DCFS caseworkers who would have testified that the children had been in their current foster homes for a number of years, those homes were safe and appropriate, and the foster parents wished to adopt the children. Both caseworkers would further testify that it would be in the children's best interest to terminate respondent's parental rights. Finally, both caseworkers were called at the hearing to testify before the trial court that the stipulated evidence was a true and accurate characterization of their testimonies.

The trial court then granted the State's petition to terminate respondent's parental rights.[1] Additionally, the court appointed D. Jean Ortega-Piron, the DCFS Guardianship Administrator, as guardian of all four children with the right to consent to each child's adoption.

---

[1]None of the three biological fathers named for the various children are parties to this appeal. Two of the fathers were defaulted by publication and the other father signed a consent to adoption. The parental rights of all three fathers were terminated by the circuit court on July 7, 1999.

Thereafter, respondent never sought an order to stay the enforcement of the July 7, 1999, order terminating her parental rights and appointing a guardian to consent to the adoption of the children. Instead, respondent filed a motion on August 4, 1999, to vacate the default judgment. That motion was denied on September 16, 1999, following a hearing. At the hearing on the motion to vacate the default judgment, respondent did not testify and did not present any witnesses. Additionally, respondent did not offer any explanation for her failure to appear at the hearing on July 7, 1999. In denying respondent's motion to vacate, the trial court stated:

"[O]n the four corners of the motion itself, there is no explanation as for [respondent's] non-appearance at trial on July 7th, only that she did not appear, and, for some reason, in paragraph 1 of the pleadings, it goes on to state that [respondent] did appear in court on July 12th of 1999, and neither the pleadings or arguments go to explain why she would have come to court on some other day than the scheduled court date."

The court further acknowledged that default was the most severe sanction it could impose, but then noted the following:

"Even though a default order was entered against [respondent], the court still required the State to present its evidence before any findings of unfitness were made and, based on the stipulations that were entered between the State and the GAL, the court then, based on the evidence presented, entered findings of unfitness against [respondent]."

The court also noted that a delay or continuance of the trial would not have been in the best interests of the children and that the State had every right to require respondent's appearance in order to elicit her testimony as it might pertain to the petition to terminate her parental rights.

On October 1, 1999, respondent filed a notice of appeal of the order denying her motion to vacate. Adoption

orders were entered for India B., Felicia J., and Aiesha J. on October 1, 1999, and for Dell B. on September 17, 1999. The appellate court affirmed the judgment of the circuit court denying respondent's motion to vacate the default judgment. No. 1—99—3433 (unpublished order under Supreme Court Rule 23). The appellate court found that the default judgment in this case did not violate respondent's due process rights and did not amount to too severe a sanction for respondent's unexplained failure to appear in the face of a Rule 237(b) notice to appear. We granted respondent's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

On appeal to this court, respondent argues that the trial court's termination of her parental rights by default judgment for her failure to appear violated her due process rights and her right to counsel where her attorney was not allowed to present a defense or cross-examine witnesses. In response, the State contradicts respondent's arguments that her due process rights and her right to counsel were violated, noting that the default judgment barring cross-examination was the only realistic sanction that could have been granted for respondent's failure to appear given that it was the respondent's testimony that the State was seeking to compel and respondent does not indicate that she intended to call any witness to testify on her behalf.

The State has also filed a motion to dismiss this appeal as moot in light of this court's recent decision in *In re Tekela*, 202 Ill. 2d 282 (2002). In *Tekela*, this court held that where a parent appealed but failed to obtain a stay of an order terminating her parental rights, and where the children's adoptions were completed more than one year before the appellate court issued its ruling reversing the termination order, the appeal was moot and the appellate court's order had to be vacated. *Tekela*,

202 Ill. 2d at 292. The State argues that given the holding in *Tekela*, the present appeal is also moot. We agree.

In *Tekela*, the mother's parental rights were terminated following a dubious summary judgment procedure. The appellate court, however, reversed the termination order. At the time of the appellate court's decision reversing the termination order, more than one year had passed from the date of the adoptions of the two minors in that case. *Tekela*, 202 Ill. 2d at 285-86. We granted leave to appeal and then vacated the appellate court's order and reinstated the circuit court's termination order, finding that because the mother failed to obtain a stay to prevent enforcement of the termination order, the circuit court had authority to move forward with the adoption proceeding and the lapse of the one-year period to petition for relief from a final order under the Adoption Act (see 735 ILCS 5/2—1401 (West 1998); 750 ILCS 50/20b (West 1998)) precluded this court from granting any relief. *Tekela*, 202 Ill. 2d at 289.

Similarly to the summary judgment procedure employed in *Tekela*, the circuit court in the instant case terminated respondent's parental rights based on a default judgment without allowing her attorney to introduce any evidence. Additionally, the present case is factually similar to *Tekela* in that here more than three years have now elapsed from the dates of the adoptions of the four children and they have been residing in the homes of their adoptive parents for over seven years now.

Respondent argues that a significant difference between this case and *Tekela* is that here the final adoption order for one of respondent's children was entered *prior to* the timely filing of her notice of appeal and the adoption orders for the remaining children were entered *on the same day* that her notice of appeal was filed, while in *Tekela* the adoption orders were entered a couple of months after the mother filed her notice of appeal.

Contrary to respondent's argument, we find that the significant fact is not the timing of the notices of appeal, but rather that the mothers in both cases failed to obtain stays of the termination orders. That the respondent in the present case filed her notice of appeal after or on the same day that the adoption orders were entered is not legally significant because a notice of appeal clearly does not operate as a stay so as to impact " 'the enforcement and effect of the judgment.' " *Tekela*, 202 Ill. 2d at 287-88, quoting *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 527 n.4 (2001). Thus, it is completely irrelevant that the adoption orders were entered before or on the same day that respondent's notice of appeal was filed when the notice of appeal would have had no impact on enforcement of the judgment. Respondent ignores the fact that she had 72 days to seek a stay from the time the termination order was entered on July 7, 1999, until the first adoption order was entered on September 17, 1999.

Her argument also ignores the fact that the critical point in time in this case is not the date of the adoptions themselves but rather one year after the date of the adoptions, as it is on this latter date that the adoptions became unchallengeable. Section 20b of the Adoption Act provides as follows:

> "A petition for relief from a final order or judgment entered in a proceeding under this Act, after 30 days from the entry thereof under the provisions of Sec. 2—1401 of the Code of Civil Procedure or otherwise, must be filed not later than one year after the entry of the order or judgment." 750 ILCS 50/20b (West 1998).

As *Tekela* noted, a petition for relief from a final order under the Adoption Act must be filed within one year after entry of the order; thereafter the adoption becomes unchallengeable, making it impossible to grant a party effective relief with respect to the termination order. *Tekela*, 202 Ill. 2d at 293, citing 750 ILCS 50/20(b) (West 1998). This is supported by public policy considerations,

requiring that adoptions be accorded a certain degree of finality and stability. *Tekela*, 202 Ill. 2d at 293. Given our conclusion that the respondent's notice of appeal in this case did not operate as a stay, and could not operate as a stay even if it was filed before the adoption orders were entered (see *Tekela*, 202 Ill. 2d at 290), the termination order of July 7, 1999, necessarily became fully enforceable and the circuit court had authority to move forward with the adoption proceeding (see *Tekela*, 202 Ill. 2d at 290). In fact, section 5 of the Adoption Act specifically requires that the proceedings to adopt children be commenced by the prospective adoptive parents within 30 days after such child becomes "available" for adoption. 750 ILCS 50/5 (West 1998). Here, the children became "available" within the meaning of the statutory scheme on the date that the respondent's parental rights were terminated, July 7, 1999. See 750 ILCS 50/1(F)(b), 8(a)(1) (West 1998). Thus, it was incumbent upon respondent to seek a stay of the enforcement of the termination order. This the respondent did not do.

Arguably, enforcement of the termination order was automatically stayed for a brief time from August 4, 1999, when respondent filed her motion to vacate until September 16, 1999, when the circuit court issued its order denying the motion to vacate. Section 2—1203 of the Code of Civil Procedure (the Code) provides that "[i]n all cases tried without a jury," a timely filed motion to vacate "stays enforcement of the judgment." 735 ILCS 5/2—1203 (West 2000). After the circuit court denied respondent's motion to vacate, however, the termination order became fully enforceable once again. The circuit court was not precluded from entering the adoption orders after September 16, 1999.

Respondent argues in her reply brief that the trial court barred her counsel from seeking a stay on her behalf and, at any rate, she did not have enough time to

seek a stay. At oral argument before this court, respondent took a new position on this matter, contending for the first time that her counsel sought a stay at the time the default judgment was entered on July 7, 1999, but that the trial court denied the request.

We first note that respondent's mistaken claim that she sought a stay at the time of the July 7, 1999, default judgment seems to be the result of her confusion over the difference between a stay of the enforcement of a judgment (735 ILCS 5/2—1305 (West 2000); 155 Ill. 2d R. 305(d)) and a "stay" of the proceedings until a party can comply with a notice to appear for a hearing, which is one of the available sanctions under Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)). From our perusal of the record, it is clear that respondent did not at any time seek a stay of the enforcement of the default judgment entered on July 7, 1999. Instead, respondent's counsel merely sought to avoid an adverse sanction by requesting a continuance of the proceedings before any judgment would be entered to allow respondent to appear at a later date for trial.

There is also no merit to respondent's argument that her counsel was barred from seeking a stay on her behalf or that counsel could not request a stay on her behalf because it was too late. First, the trial court never barred respondent's counsel from seeking, as she now claims, "a stay or other relief on the mother's behalf." Rather, the trial court, in the context of placing respondent in default, barred her from "testifying" and "presenting a defense" or "further pleadings." The judge did not and could not have prevented her from attempting to stop or stay enforcement of the default judgment; it is undisputed that she was allowed to file a motion to vacate that judgment and nothing in the record indicates that she was barred from seeking a stay.

Moreover, she could have sought the effects of a stay

almost immediately after the default judgment. Section 2—1305 of the Code provides in relevant part:

"Motion to stay. A party intending to move to set aside any judgment *** may apply to the court or to the judge in chamber for a certificate (which the judge may, in his or her discretion, grant) that there is probable cause for staying further proceedings until the order of the court on the motion. Service of a copy of the certificate at the time of or after service of the notice of the motion stays all further proceedings accordingly." 735 ILCS 5/2—1305 (West 2000).

Respondent's insinuation that a request for a stay would have been a waste of time is without merit. *Tekela* rejected precisely the same argument, noting that persuasive arguments exist to support a stay request in the context of cases involving a termination order with an adoption looming. *Tekela*, 202 Ill. 2d at 288. This is because a stay may be necessary to preserve the status quo pending appeal. *Tekela*, 202 Ill. 2d at 288-89. We also note that under Supreme Court Rule 305, a motion for a stay may be made to the reviewing court if the trial court denies the application for a stay or application is not practical. 155 Ill. 2d Rs. 305(b), (d). Thus, her argument that she was somehow prevented from seeking a stay by the trial court or by a lack of time is without support in fact or in law.

Respondent's argument that she had "barely twenty-four hours to file her notice [of appeal] and win her case" after her motion to vacate was denied is mistaken. Again, that argument ignores that she had 72 days to seek a stay from entry of the default judgment to the first adoption order. Additionally, her argument incorrectly assumes that adoption orders become unassailable immediately upon entry. *Tekela*, however, held only that, in the interest of finality and stability, such orders are unchallengeable after the lapse of the statutory one-year period for challenging adoption orders. *Tekela*, 202 Ill. 2d at 293. In *Tekela*, the appellate court was never informed

that, at the time its decision was filed reversing the termination order, nearly 17 months had elapsed from the final orders of adoption. The appellate court's opinion reversing the termination order would not have been erroneous based on mootness had it been issued within one year of the adoptions because, until that point, the adoptions would have been subject to a petition to vacate upon a showing that there was no valid termination of parental rights in force. See *Tekela*, 202 Ill. 2d at 292-93.

Aside from the prospect that respondent could have sought a stay of the July 7, 1999, order, we also note that she could have sought an expedited appeal by requesting that the case be placed on an accelerated docket in the appellate court pursuant to Supreme Court Rule 311 (155 Ill. 2d R. 311) and by requesting an expedited briefing schedule pursuant to Supreme Court Rule 343(c) (155 Ill. 2d R. 343(c)). This could have ensured that the appellate court would hear her case in a timely fashion to make meaningful any relief potentially granted to her.

Respondent does not cite any persuasive authority for her proposition that she would not have standing to collaterally attack the adoptions if the termination order had been timely overturned. She cites section 2—29 of the Juvenile Court Act (705 ILCS 405/2—29 (West 1998)) to support her argument, but that section merely provides in relevant part that a parent whose parental rights have been terminated has no right to notice of the petition for adoption. That section, along with provisions of the Adoption Act defining a legal adoption, actually defeats her argument. If the termination order was vacated within one year of the adoption orders, then the respondent's argument would be that she, as a parent whose parental rights had not been validly terminated and who had not consented to the adoptions, could not have been subjected to having her children adopted at all, let alone without notice of the adoption. Given those

hypothetical circumstances, she would be entitled to collaterally attack the adoptions under section 2—1401 of the Code (735 ILCS 5/2—1401 (West 1998)), as is plainly contemplated by section 20b of the Adoption Act (750 ILCS 50/20b (West 1998)).

Respondent notes that she had no legal notice of the adoptions; from this, she implies that she was somehow unaware that the children could be subject to a swift adoption. Respondent's contention is not persuasive. Respondent was represented by counsel in the termination proceeding, and the motion filed by the State to terminate her parental rights was entitled, "Petition for Appointment of a Guardian with Right to Consent to Adoption." Furthermore, the order granting the State's termination petition specifically appointed a public guardian with the right to consent to the adoption of the children, as is specifically authorized by section 2—29 of the Juvenile Court Act (705 ILCS 405/2—29 (West 1998)). Thus, respondent was aware from the inception of the termination proceedings that the goal was to free the minors for adoption. Moreover, section 5 of the Adoption Act makes it clear that the proceedings to adopt the children had to be commenced within 30 days of the termination of her parental rights. 750 ILCS 50/5 (West 1998). Under these circumstances, we find no merit to respondent's contention.

Respondent next argues that the adoptions were "procured" by the DCFS guardians "in secrecy by violating their own administrative regulations." She contends that the adoptions were invalid, untimely and fraudulent. Specifically, she cites sections 309.20 and 309.60 of title 89 of the Illinois Administrative Code (89 Ill. Adm. Code §§ 309.20, 309.60 (2002)), along with section 5(B)(k) of the Adoption Act (750 ILCS 50/5(B)(k) (West 1998)), as authority for her claim that the judgments of adoption in this case were invalid because they failed to "reflect the

filing of [her] notice of appeal" from the denial of her motion to vacate the termination order. Respondent cites the same authority for her additional argument that petitioners for adoption must "represent to the court all legal risks of the adoption placement" and petitioners must "inform the judge that 'termination of parental rights is under judicial appeal.' "

Respondent misconstrues the statutory and administrative code sections that she relies upon to support her argument. We first note that the DCFS guardian did not procure the adoptions of the minors in this case. Instead, as is clear from the judgment of adoptions for the children attached to respondent's reply brief, the adoptions were prosecuted by the prospective adoptive parents, who were the petitioners in the adoption cases. See 750 ILCS 50/5(A) (West 1998). The DCFS guardian had a limited role in the process, which role consisted of signing the written consents to the adoptions of the minors. The right to consent to the adoptions of the children had been authorized previously by the circuit court when it entered its termination order on July 7, 1999. We further note that there is no support for respondent's claims that the judgments of adoption had to reflect that a notice of appeal had been filed from the termination order, or that the adoption petitioners had to inform the adoption court of legal risks to the adoption placement because the termination of parental rights was appealed by respondent.

Section 5(B)(k) of the Adoption Act provides as follows:

> "A *petition* to adopt a child other than a related child must state:
>
> * * *
>
> (k) Whatever *orders, judgments or decrees* have heretofore been entered by any court affecting (1) adoption or custody of the child, or (2) the adoptive, custodial or parental rights of *either petitioner*, includ-

ing the prior denial of any petition for adoption pertaining to such child, or to the petitioners, or either of them." (Emphases added.) 750 ILCS 50/5(B)(k) (West 1998).

Section 5(B) of the Adoption Act enumerates what a valid *petition* for adoption must state; it does not set forth the requirements of an adoption judgment. 750 ILCS 50/5(B) (West 1998). Furthermore, section 5(B)(k) requires only that the petition contain whatever *orders, judgments or decrees* have been entered by *any court* affecting adoption or custody of the child, or affecting the rights of *the petitioners* in the adoption proceeding in relation to the child. 750 ILCS 50/5(B)(k) (West 1998). It clearly does not require that the petitioners, as the prospective adoptive parents, inform the court of any notice of appeal filed by the respondent in the termination of parental rights proceeding. The statutory scheme itself contemplates that prospective adoptive parents will be filing their adoption petitions within the same 30-day time frame allowed for an appeal from a termination of parental rights order. 750 ILCS 50/5(A) (West 1998); 155 Ill. 2d R. 303(a)(1). Moreover, a notice of appeal cannot be considered tantamount to a court order, judgment or decree affecting an adoption.

Similarly, there is no language contained in the sections of the Illinois Administrative Code cited by respondent that would require the petitioners in an adoption proceeding to inform the court that a notice of appeal has been filed from the termination order or that a "legal risk" to the adoption exists. Sections 309.20 and 309.60 of the Illinois Administrative Code are simply internal rules of the DCFS designed to promote the best interests of children and to aid prospective adoptive parents (see 89 Ill. Adm. Code § 309.10 (2002)); they contain no protections whatsoever for parents whose parental rights have been terminated. Section 309.20 is merely a definitions section. It defines the term "[l]egal risk placement"

as a "placement with a family of a child, not yet legally free for adoption, made in the best interests of the child with the intent that the family will become an adoptive resource for the child should the child become legally free for adoption." 89 Ill. Adm. Code § 309.20 (2000). Section 309.60 addresses "[l]egal risk placements," but this section does not require, as respondent states, that the adoption judgment reflect that a notice of appeal has been filed or that the petitioners present to the court all legal risks of the adoption. Instead, that section sets forth when a legal risk placement is in the best interests of a child and the type of information that must be given to prospective adoptive parents. 89 Ill. Adm. Code § 309.60 (2000).

Language in section 309.60 does suggest that *"[p]rior to placing a child in a legal risk placement,"* the DCFS must inform *"the prospective adoptive parents \*\*\** that the child is not yet legally free for adoption"* if termination of parental rights are "under [judicial] appeal." (Emphases added.) 89 Ill. Adm. Code § 309.60 (2000). There is nothing in that section, however, requiring petitioners to inform the court that an appeal has been filed from a termination order. Instead, the provision is limited in scope to requiring only that the DCFS inform the prospective adoptive parents of the legal risks prior to placement. Even more importantly, we note that section 1(F) of the Adoption Act (750 ILCS 50/1(F) (West 1998)) is the controlling authority for defining when a person is deemed "available for adoption" in Illinois. That section provides in relevant part as follows:

> "A person is available for adoption when the person is:
> \*\*\*
> (b) a child to whose adoption a person authorized by law, other than his parents, has consented, or to whose adoption no consent is required pursuant to Section 8 of this Act[.]" 750 ILCS 50/1(F)(b) (West 1998).

Under section 8(a) of the Adoption Act, respondent's

consent to the adoption of the children was not required because she had been found unfit by clear and convincing evidence. 750 ILCS 50/8(a) (West 1998). Section 8(b)(4) provides as follows:

"(b) Where consents are required in the case of an adoption of a minor child, the consents of the following persons shall be sufficient:

\* \* \*

(4) Any person or agency having legal custody of a child by court order if the parental rights of the parents have been judicially terminated, and the court having jurisdiction of the guardianship of the child has authorized the consent to the adoption[.]" 750 ILCS 50/8(b)(4) (West 1998).

Accordingly, the four minors in the instant case became available for adoption when the following three events were completed: (1) the parental rights of the parents were terminated; (2) the circuit court granted the State's petition and appointed a guardian of the children with the right to consent to their adoptions; and (3) the guardian signed the written consents to the adoptions. It is undisputed that these prerequisites to the availability of the children for adoption were fulfilled in this case. The statutory scheme clearly does not require any notice to the respondent of the adoptions (see 750 ILCS 50/7 (West 1998); 705 ILCS 405/2—29 (West 1998)), nor does it require that the circuit judge be informed by petitioner of "legal risks" or that a notice of appeal has been filed. The adoptions in this case were clearly not invalid, untimely or fraudulent.

Lastly, respondent argues that we should apply an exception to the mootness doctrine and hear this case on the merits. A case on appeal is rendered moot where the issues that were presented in the trial court do not exist any longer because intervening events have rendered it impossible for the reviewing court to grant the complaining party effectual relief. *Tekela*, 202 Ill. 2d at 292-93; *Richardson v. Rock Island County Officers Electoral*

*Board*, 179 Ill. 2d 252, 256 (1997). An exception to the mootness doctrine exists when the question involved is of a substantial public nature, an authoritative determination for future guidance is needed, and the circumstances are likely to recur. *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999); *Richardson*, 179 Ill. 2d at 256. Another exception exists for cases involving events of short duration that are capable of repetition, yet evading review. *In re A Minor*, 127 Ill. 2d 247, 258 (1989), quoting *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 236 (1982), quoting *Sosna v. Iowa*, 419 U.S. 393, 399-400, 42 L. Ed. 2d 532, 540, 95 S. Ct. 553, 557 (1975). For that exception to apply, there must be a reasonable expectation that the same complaining party would be subject to the same action again and the action challenged must be too short in duration to be fully litigated prior to its cessation. *In re A Minor*, 127 Ill. 2d at 258. These exceptions are to be construed narrowly and require a clear showing of each criterion to bring the case within the terms. *Walgreen*, 186 Ill. 2d at 365.

Here, we do not believe that this case meets the rigid standards discussed above. The exception for cases of short duration evading review is clearly not satisfied because respondent could have obtained meaningful review of the case simply by obtaining a stay, and respondent is not likely to be subject to the same action again. Respondent argues that review of this case is necessary under the public importance exception because there is conflicting appellate court authority on the appropriate application of Supreme Court Rule 219(c) sanctions in cases involving termination of parental rights. Without undertaking an examination of the merits of respondent's claim on appeal, we simply note that each appellate case cited by respondent was decided on its own peculiar set of facts, and the precedent is not irreconcilably conflicting. Accordingly, an authoritative determination in this case is unwarranted.

We additionally note that *Tekela* implicitly rejected application of the public importance exception under similar facts. There, this court noted the general importance of the merits of the case, but then expressed its reluctance to undo a complicated situation involving a finalized adoption arising through a party's failure to obtain a stay. *Tekela*, 202 Ill. 2d at 293.

CONCLUSION

For the foregoing reasons, we conclude that respondent's failure to obtain a stay in this case allowed the adoptions of India B., Dell B., Felicia J. and Aiesha J. to proceed lawfully. Final adoption orders for all four minors were entered by October 1, 1999. After the passage of the statutory one-year period, the adoptions became unchallengeable and thereby rendered the termination issue moot.

We therefore dismiss the instant appeal as moot.

*Appeal dismissed.*